STATE of Wisconsin, Plaintiff-Respondent,†

v.

Scott L. HUMPHREY, Defendant-Appellant.

Court of Appeals

*No. 80–2075–CR. Submitted on briefs July 1, 1981.—
Decided August 12, 1981.*
(Also reported in 310 N.W.2d 641.)

† Petition to review granted.

For the defendant-appellant the cause was submitted on the brief of *David C. Niblack,* state public defender, and *Michael Yovovich,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Kirbie Knutson,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.   Scott L. Humphrey was convicted of homicide by intoxicated use of a motor vehicle. At trial, the state introduced results of a breathalyzer examination administered to the defendant shortly after the accident. Humphrey objected to the admission of the test results because the state had not preserved the test ampoule. In motions after verdict, Humphrey renewed his objection and moved for a new trial, pursuant to Rule 809.30(1) (f), Stats., and this court's decision in *State v. Booth,* 98 Wis. 2d 20, 295 N.W.2d 194 (Ct. App. 1980). The trial court denied his request. Humphrey appeals. We reverse and remand to the trial court for a hearing to determine whether the test ampoule would have been of any evidentiary value at the time its production was sought by Humphrey.

On May 15, 1979, Humphrey was involved in a two-car head-on collision in the town of Genesee. The driver of the other car was killed. Investigating officers gave Humphrey field sobriety tests. On the basis of these tests and Humphrey's behavior at the scene, the officers arrested him for operating a motor vehicle while under the influence of an intoxicant. A breathalyzer examination of the defendant produced a reading of .23 percent. Upon the other driver's death, Humphrey was charged with homicide by intoxicated use of a vehicle.

On appeal, Humphrey contests the finding that he was intoxicated. He claims the breathalyzer results were inadmissible. Consideration of Humphrey's claim requires a short chronology of procedural events in this case. The breathalyzer test was administered on May 15, 1979. On September 7, 1979, Humphrey filed a general discovery motion. On September 27, 1979, he filed a motion to sup-

press the breathalyzer results because the state could not produce the test ampoule.[1] The trial court denied Humphrey's motion, and on March 26, 1980, a jury found him guilty. On June 10, 1980, this court decided *State v. Booth,* 98 Wis. 2d 20, 295 N.W.2d 194 (Ct. App. 1980), which affirmed the suppression of breathalyzer results when the state had destroyed the test ampoule. Humphrey then moved the trial court for post-conviction relief pursuant to Rule 809.30, Stats. The trial court denied his motion for a new trial, and Humphrey appeals.

The state first argues that Humphrey's request for the ampoule, filed nearly four months after the examination, was not timely made. In its argument, the state is not referring to statutory time limits for pretrial discovery motions. Rather, the state argues that *Booth* created a thirty day limit from the date of the breathalyzer test within which the defendant must move for production of the test ampoule. The state's assertion is not correct. This court, in *State v. Raduege,* 100 Wis. 2d 27, 301 N.W. 2d 259 (Ct. App. 1980), stated "there is nothing magical about *Booth's* implied thirty day time limit. Such an implied time limit should not be construed to be applicable to other cases wherein different circumstances may exist and differing expert testimony may be given." *Id.* at 32, 301 N.W.2d at 261–62. Whether the motion will be granted is controlled by whether the state can establish that the chemical composition of the ampoule has changed over time so that "analysis of a test ampoule made by a defense expert would be futile and unavailing." *Id.* at 32, 301 N.W.2d at 262. It should be noted, however, that this inquiry is separate and distinct from whether the

[1] Between those two motions, another branch of the circuit court for Waukesha county ordered suppression of breathalyzer results after the state could not produce the test ampoule. That ruling was later affirmed by this court in *State v. Booth,* 98 Wis. 2d 20, 295 N.W.2d 194 (Ct. App. 1980).

statutory guidelines for pretrial discovery motions have been met.

The state next argues that the breathalyzer test results should not be suppressed because Humphrey did not specifically request production of the test ampoule. Humphrey's discovery motion requested, *inter alia,* "[a]ll materials seized from the person of the defendant . . ." and "[a]ny . . . tangible objects which the state intends to use in the trial, which were obtained from or belong to the defendant or any co-defendant." He also requested "[a]ny and all physical evidence in the possession of the state . . . which tends to exculpate the defendant of the commission of this offense or tends to minimize his complicity in this offense." Humphrey did not file a specific request for production of the test ampoule pursuant to sec. 971.23(5), Stats.[2] Humphrey later moved to suppress the breathalyzer test results contending that the state failed to comply with his discovery demand in that it could not produce the ampoule to the defendant for scientific analysis.

The state contends that the general language of Humphrey's discovery motion is insufficient to require the state to produce the test ampoule. This generality, it claims, distinguishes the instant case from *Booth.* The defendant in *Booth* specifically requested production of the ampoule for scientific testing. *Booth* did not involve "a general or ambiguous discovery request." *Booth,* 98 Wis. 2d at 24, 295 N.W.2d at 197.

---

[2] Section 971.23(5), Stats., provides:

(5) SCIENTIFIC TESTING. On motion of a party subject to s. 971.31(5), the court may order the production of any item of physical evidence which is intended to be introduced at the trial for scientific analysis under such terms and conditions as the court prescribes. The court may also order the production of reports or results of any scientific tests or experiments made by any party relating to evidence intended to be introduced at the trial.

The purpose of pretrial discovery motions is to help insure a fair trial. That constitutional right to a fair trial does not entitle the defendant to inspect the state's entire file. *In re State ex rel. Lynch v. County Court,* 82 Wis. 2d 454, 463–64, 262 N.W.2d 773, 777 (1978). The prosecution does, however, have the duty to disclose information which has been specifically requested by the defendant. *Tucker v. State,* 84 Wis. 2d 630, 642, 267 N.W. 2d 630, 637 (1978). Where no request or only a general request for exculpatory information has been made, the state's failure to disclose information is reversible error only when the evidence is so material that the defendant is denied a fair trial. *Id.*

In *Booth,* we stated the materiality of the test ampoule is "obvious." *Booth,* 98 Wis. 2d at 27, 295 N.W.2d at 198. Analysis of the test ampoule is the sole means available to a defendant to challenge the credibility of the test results. *Id.* That materiality is subject to rebuttal if the state can establish deterioration of the ampoule over time. Therefore, we cannot say, as a matter of law, in every case that nonproduction of the ampoule would deny the defendant a fair trial. Because of the opportunity to rebut materiality, in some instances the ampoule may not be so material that failure to disclose would be reversible error. Therefore, under the standard set forth in *Tucker,* a defendant seeking the ampoule used in the breathalyzer examination must make a specific request under sec. 971.-23(5), Stats. The state then has notice of the defendant's request and can comply or attempt to rebut the materiality of the ampoule.

In this case, Humphrey's motion was a general discovery motion. No mention of a breathalyzer ampoule was made in the motion. The district attorney could not have determined, at that time, whether Humphrey desired the ampoule. However, the suppression motion filed by the

defendant three weeks later was clearly premised on the nonproduction of the test ampoule. The state was thereby put on notice that Humphrey wanted the ampoule. The state could have defeated the suppression motion by producing the desired ampoule. In this case, the suppression motion was sufficient notice to the state and cured the generality of the prior discovery motion.[3]

The final contention raised by both parties concerns retroactivity. Humphrey argues that because the ampoule was not preserved, he should be granted a new trial in which the breathalyzer results would be inadmissible. The state contends a new trial cannot be granted because Humphrey's conviction predates the *Booth* decision. It urges this court to rule that the rationale of *Booth* be given prospective application only. It claims law enforcement officials destroyed the ampoule in good faith and that retroactive application of *Booth* would overburden the courts with motions for new trials in cases where breathalyzer evidence was admitted into evidence.[4] Humphrey contends that *Booth* should be given

---

[3] The state also claims *Booth* is not controlling here because this case is a prosecution for homicide by intoxicated use of a motor vehicle, where the breathalyzer results alone will not support a conviction. Sec. 940.09, Stats. As a result, the importance of the test results is less than in a drunk driving prosecution where a reading of more than .1 percent can support a conviction without any corroborating physical evidence. Therefore, the state contends that *Booth's* finding of the ampoule's materiality should be limited to prosecutions where the breathalyzer test results alone are enough to convict.

We disagree. Essentially, the state's argument attacks the weight which the trier of fact should give the breathalyzer results. The nature of the charge does not alter the fact that without the ampoule, a defendant is virtually foreclosed from challenging the accuracy of the reading. *See State v. Booth,* 98 Wis. 2d at 26–27, 295 N.W.2d at 197–98.

[4] The issue of retroactive application of *Booth* was not addressed in *State v. Raduege,* 100 Wis. 2d 27, 301 N.W.2d 259 (Ct. App. 1980).

limited retroactive application. He argues that when the issue of production of the ampoule was presented to the trial court, the fact that a conviction was obtained before an appellate court ruled on that specific question should not prevent the defendant from renewing his claim on appeal.

We agree. This court in *Booth* held that "the ampoule used in the breathalyzer test constituted material evidence and that its destruction by the State denied the defendant his constitutional right to due process of law." *Booth,* 98 Wis. 2d at 20, 295 N.W.2d at 195. (Footnote omitted.) When constitutional standards are applied in criminal cases, "[t]he Court may in the interest of justice make the rule prospective . . . where the exigencies of the situation require such an application." *Stovall v. Denno,* 388 U.S. 293, 297 (1967). Three criteria determine whether a rule should be prospectively applied: (1) the effect of the new rule on the fact-finding process; (2) the extent of reliance by law enforcement authorities on the old standards, and (3) the effect on the administration of justice. *Fitzgerald v. State,* 81 Wis. 2d 170, 174, 259 N.W.2d 743, 744 (1977). These three criteria must be balanced by this court in judging retroactivity. No single factor is controlling. The balancing process is essentially a public policy determination.

If the new rule has a beneficial impact on the fact-finding process, retroactivity is favored. The rule of *Booth* is designed to ensure that all material evidence is available at trial. The reliability and credibility of the breathalyzer examination can be properly evaluated only if the ampoule is preserved. The integrity of the fact-finding process is enhanced by *Booth* and supports retroactivity.

The second factor generally favors prospective application. If law enforcement authorities relied in good faith on the former rule, retroactive application is discouraged.

Humphrey concedes that law enforcement officials did not destroy the test ampoule in bad faith. *Booth* was the first Wisconsin case in this area. The police cannot be faulted for their pre-*Booth* policy of nonpreservation.

If the new rule tends to impair the administration of justice, retroactivity is not favored. Humphrey concedes that total retroactive application of *Booth* could spur a flood of new trials and overburden the court system. This factor, especially where reversals may occur in cases where no actual prejudice has been suffered, points toward a prospective application.

■

Humphrey does, however, argue that in certain circumstances *Booth* should be given retroactive application. We agree. The first factor favors retroactivity, while the second factor favors prospectivity. As to the third criterion, application may be fashioned so as to limit the burdensome effect on the administration of justice. We conclude that in all prosecutions pending at the time the *Booth* decision was issued where the demand was timely made or where the issue of the destruction of test ampoules was raised to the trial court, the holding of *Booth* is applicable. This limited retroactivity will not create an intolerable burden on the courts. Yet, it will afford to those litigants who argue the issue the full advantage of the *Booth* rationale.

■

Humphrey requests this court to grant a new trial. We decline to do so. Rather, we remand this case to the trial court for an evidentiary hearing to determine whether the passage of time had so diminished the materiality of the ampoule that its destruction did not deny Humphrey due process of law. As we stated in *State v. Raduege*, 100 Wis. 2d at 32–33, 301 N.W.2d at 262:

The *Booth* case, in effect, created a presumption that the breathalyzer ampoule itself was material evidence since scientific testing could potentially establish whether the

ampoule contained the proper chemical mixture at the time the breathalyzer test was administered. Such a presumption, however, would be subject to rebuttal. Because the chemical reagents in the ampoule are subject to deterioration, the intrinsic materiality of the ampoule, with the passage of time, could be diminished to the point where the ampoule could no longer be of any evidentiary value under secs. 904.01 and 904.02, Stats. [Footnote omitted.]

If, after the evidentiary hearing, the trial court determines that at the time requested the analysis of the ampoule would not have constituted material evidence, the trial court should deny Humphrey's motion for a new trial. If, however, the state fails to rebut the presumption of materiality, the trial court should grant a new trial and order the breathalyzer results suppressed.

*By the Court.*—Order reversed and cause remanded with directions.