STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Scott L. HUMPHREY, Defendant-Appellant.

Supreme Court

*No. 80–2075–CR. Argued March 31, 1982.—Decided April 27, 1982.*

(Also reported in 318 N.W.2d 386.)

For the plaintiff-petitioner the cause was argued by *Kirbie Knutson,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *David C. Niblack,* state public defender.

STEINMETZ, J.  The issue in this case is whether the state had a duty to produce the breathalyzer ampoule used in Scott L. Humphrey's test when only a general request for exculpatory evidence was made.  The court of appeals held there was such a duty in *State v. Humphrey,* 104 Wis. 2d 97, 310 N.W.2d 641 (Ct. App. 1981).  We reverse.

Scott L. Humphrey was convicted of homicide by intoxicated use of a motor vehicle. Sec. 940.09, Stats. At trial the state introduced results of a breathalyzer examination administered to the defendant shortly after the accident. Humphrey objected to the admission of the test results because the state had not preserved the test ampoule. In motions after verdict, Humphrey renewed his objection and moved for a new trial, pursuant to Rule 809.30(1)(f), Stats.,[1] and the court of appeals decision in *State v. Booth*, 98 Wis. 2d 20, 295 N.W.2d 194 (Ct. App. 1980). The trial judge, Honorable Neal P. Nettesheim, denied his request. The court of appeals reversed and remanded to the trial court for a hearing to determine whether the test ampoule would have constituted material evidence at the time it was sought by Humphrey.

On May 15, 1979, Humphrey was involved in a two car head-on collision in the Town of Genesee. The driver of the other car was killed. Investigating officers gave Humphrey field sobriety tests shortly after the accident. On the basis of these tests and Humphrey's general behavior at the scene, the officers arrested him for operating a motor vehicle while under the influence of an intoxicant. A breathalyzer examination of Humphrey produced a reading of 0.23 percent blood alcohol concentration. Upon the other driver's death, Humphrey was charged with homicide by intoxicated use of a vehicle in violation of sec. 940.09, Stats.

The breathalyzer test was administered on May 15, 1979. Humphrey was arraigned on August 30, 1979. On September 7, 1979, Humphrey filed a general discovery

[1] Rule 809.30(1)(f), Stats., provides:

"809.30 **Rule (Appeals in felony cases).** (1) APPEAL OR POST-CONVICTION MOTION BY DEFENDANT. . . .

". . .

"(f) The defendant shall file a notice of appeal or motion seeking postconviction relief within 30 days of the service of the transcript."

motion. On September 27, 1979, he filed a motion to suppress the breathalyzer result because the state could not produce the test ampoule. The trial court denied Humphrey's suppression motion, and on March 26, 1980, a jury found him guilty of homicide by intoxicated use of a vehicle. On June 10, 1980, the court of appeals decided *State v. Booth, supra,* which affirmed the suppression of the breathalyzer result in a case where the state had destroyed the test ampoule.

In *Booth,* the court of appeals held that the test ampoule constituted sufficiently material evidence to fall within the ambit of a defendant's constitutional right to due process of law.

The court of appeals in *Booth* reported this court's adoption of the rule regarding destroyed evidence set forth in *United States v. Bryant,* 439 F.2d 642 (DC Cir 1971). *See State v. Amundson,* 69 Wis. 2d 554, 578, 230 N.W.2d 775, 788 (1975). The court of appeals cited the following from *Amundson:*

"We find the reasoning of the circuit court in *United States v. Bryant, supra,* persuasive. It is concluded, therefore, that the inability of the defendant to show that the destroyed evidence was exculpatory does not alone defeat the claim that its destruction and nondisclosure by the prosecution denied the defendant due process of law given the showing that the evidence was clearly material to the issue of guilt or innocence."

This court also held in the *Amundson* case:

"The *Augenblick* and *Killian Cases* reflect that the good or bad faith of the prosecutor is a factor to be considered within the constitutional framework of whether an item of evidence has been 'suppressed' by its destruction." *Id.* at 579.

The *Booth* court acknowledged that there was no allegation the destruction of the test ampoule was done in bad faith. The *Booth* court recognized that the opera-

tional check list provided by the Motor Vehicle Division (MVD) of the Wisconsin Department of Transportation directed the officer administering the breathalyzer test to dispose of the test ampoule upon completion of the testing process. The officer who destroyed the ampoule used in the defendant's test was merely following the directions provided him by the state agency.

This direction of the MVD was consistent with this court's holding in *State v. Neitzel*, 95 Wis. 2d 191, 203, 289 N.W.2d 828 (1980):

"It should be noted, moreover, that the chemical tests specified under the implied consent law are entitled to a prima facie presumption of accuracy. *Suspension of Operating Privilege of Bardwell*, 83 Wis.2d 891, 900, 266 N.W.2d 618 (1978)."

The *Bardwell* case cited the seminal case of *State v. Trailer Service, Inc.*, 61 Wis. 2d 400, 212 N.W.2d 683 (1973). In *Trailer Service, Inc.*, at 407–08, we stated:

"We think a method or process for testing which is expressly authorized by statute is entitled to a prima facie presumption of correctness of purpose. In such a case, all that needs to be proved is that the method was followed. *See People v. Fair* (1965), 61 Ill. App. 2d 360, 210 N.E.2d 593; *Commonwealth v. Thurmond* (1962), 27 Pa. Dist. & County Reports 2d 470. A scientific or medical method not recognized as acceptable in the scientific or medical discipline as accurate does not enjoy the presumption of accuracy, *i.e.*, lie-detector tests. *See* cases cited at Anno. (1952), *Physiological or Psychological Truth and Deception Tests*, 23 A.L.R.2d 1306, 1308, sec. 2; *State v. Bohner* (1933), 210 Wis. 651, 246 N.W. 314; *LeFevre v. State* (1943), 242 Wis. 416, 8 N.W.2d 288; *State v. Perlin* (1955), 268 Wis. 529, 68 N.W.2d 32. But tests by recognized methods need not be proved for reliability in every case of violation. Examples, speedometer, breathalyzer, radar. *See* cases cited at Anno. (1973), *Speeding—Proof—Radar*, 47 A.L.R.3d 822, 831, sec. 3; *see also:* Anno. (1967), *Intoxi-*

*cation—Tests—Statutes,* 16 A.L.R.3d 748; 46 A.L.R.2d 1176; 127 A.L.R. 1513; 7 Am. Jur. 2d, *Automobiles and Highway Traffic,* p. 878, sec. 334. These methods of measurement carry a prima facie presumption of accuracy. Whether the test was properly conducted or the instruments used were in good working order is a matter of defense. The administration of law would be seriously frustrated if the validity of basic and everyday accepted tests had to be a matter of evidence in every case in the first instance. Here, Trailer Service had the duty of going forward with evidence and showing the unreliability of the weighing, either as to method or in its execution. Its lack of proof in this respect cannot be justified on the ground it was the state's duty to affirmatively prove what was a matter of defense. The state's proof met the burden of proof set forth in *Lock v. State* (1966), 31 Wis. 2d 110, 142 N.W.2d 183."

In *Neitzel, supra,* at 203, the court held:

"Because the chemical testing procedure under the implied consent law is mechanical in nature and entitled to a presumption of accuracy, the results can be fairly questioned at trial, irrespective of whether counsel was present at the test."

The *Trailer Service, Inc.* and *Neitzel* decisions set the stage for the demand for the ampoule in the *Booth* case. Since all else was presumptively correct in the testing, all the defendant could challenge was the procedure by which the test was conducted, the machine condition, and the parts used for the individual test, *i.e.,* the test ampoule.

Thus, as *Booth* held at 27:

"The witness whose reliability is crucial in this instance is not the officer who administered the test. The key witness is the breathalyzer machine itself. Cross-examination of the officer can only reveal whether he correctly followed the proper procedures in operating the machine. Whether the machine was capable of correctly determining the amount of alcohol in the defendant's

system can only be pursued by an analysis of the ampoule's contents."

In addition to the sufficiency of the motions, another issue raised in this case is the application of the *Booth* decision, *i.e.*, whether it should be retroactively applied and if so, to what degree. This secondary issue is not relevant to the disposition of this case.

The entire subject area of ampoule production is given a degree of certainty by recently enacted legislation effective May 1, 1982. It is contained in ch. 20 and in relevant part reads:

"343.305 (10) (d) Each breathalyzer test ampoule which has been used in the test of a person to determine the alcohol content of breath shall be preserved, subject to the following conditions:

"1. Upon the completion of the chemical analysis of the person's breath, the person shall be informed that:

"a. The test ampoule shall be preserved for a period of 30 days after the test was given.

"b. During the 30-day period, the person may request the agency employing the person who conducted the analysis to transfer the test ampoule to an independent laboratory for preservation and testing. The person making the request shall pay a fee, set by and payable to the law enforcement authority, for the actual cost of transferring the ampoule. The person shall also pay a fee, set by the department of transportation by rule, for the cost of preserving the ampoule during all or part of the 30-day period. The fee shall be deposited in the transportation fund.

"c. If the person does not request the test ampoule preserved during the 30 days, the ampoule shall be destroyed by the agency employing the person who conducted the analysis.

"2. All forms, reports and preservation containers required to fulfill the requirements of this paragraph shall be furnished by the department."

The *Booth* rule relied partly on sec. 345.421, Stats., which was enacted to establish a uniform procedure for traffic violations where the offense could be charged under the state Motor Vehicle Code or under a conforming municipal ordinance; that section is inapplicable in regard to the felony charge in this case.

Pretrial motions in a felony action, including discovery motions, sec. 971.23 (4) and (5), Stats.,[2] are to be served and filed within ten days of arraignment in a felony action, unless the court permits later filing. Sec. 971.31 (5) (a).[3] Here, the defendant was arraigned August 30, 1979. His discovery motion is dated September 7, 1979, and is presumed timely filed although it is not file stamped. The motion basically requests all of the items regarding which statutory discovery is permitted, secs. 971.23 through 971.25. The motion appears to be a

---

[2] Sec. 971.23 (4) and (5), Stats., provides:

"(4) INSPECTION OF PHYSICAL EVIDENCE. On motion of a party subject to s. 971.31(5), all parties shall produce at a reasonable time and place designated by the court all physical evidence which each party intends to introduce in evidence. Thereupon, any party shall be permitted to inspect or copy such physical evidence in the presence of a person designated by the court. The order shall specify the time, place and manner of making the inspection, copies or photographs and may prescribe such terms and conditions as are just.

"(5) SCIENTIFIC TESTING. On motion of a party subject to s. 971.31(5), the court may order the production of any item of physical evidence which is intended to be introduced at the trial for scientific analysis under such terms and conditions as the court prescribes. The court may also order the production of reports or results of any scientific testing or experiments made by any party relating to evidence intended to be introduced at the trial."

[3] Sec. 971.31(5) (a), Stats., provides:

"(5) (a) Motions before trial shall be served and filed within 10 days after the initial appearance of the defendant in a misdemeanor action or 10 days after arraignment in a felony action unless the court otherwise permits."

standard form which could be filed in any criminal case. It requests production of items, such as photographs of the defendant in the company of his co-defendant, which are totally unrelated to the facts and circumstances of this case. The motion did not contain a specific request for production of the breathalyzer ampoule. In that regard, this motion differs significantly from the motion at issue in the *Booth* decision, wherein the court of appeals emphasized that it was not "faced with a general or ambiguous discovery request." *Booth, supra,* at 24.

The defendant's general request did not put the state on notice that it should produce the breathalyzer ampoule. Since the ampoule could not be categorized as a tangible object obtained from the defendant which the state intended to use in the trial, the only category of items encompassed by the defendant's discovery motion into which it could arguably fall was that of exculpatory evidence. Where only a general request for exculpatory evidence is made, a prosecutor's duty is limited to disclosing evidence which is so clearly and obviously supportive of the defendant's claim of innocence that the prosecutor must be held to have notice of his duty to disclose it. *United States v. Agurs,* 427 U.S. 97, 106–07 (1976); *Tucker v. State,* 84 Wis. 2d 630, 642, 267 N.W.2d 630 (1978).

The discovery motion did not specifically request the test ampoule, nor did the defendant move the court under sec. 927.31 (5) (a), Stats., to extend the time for such discovery motion. Instead, the defendant filed a suppression motion three weeks after his general discovery motion. The court of appeals held that the suppression motion put the state on notice that Humphrey wanted the ampoule and that this compensated for the deficiency of the discovery motion.

We disagree with the court of appeals that a suppression motion serves as an amendment to a discovery motion. Suppression of evidence is one of the possible sanctions for the state's failure to comply with a discovery request or order, but no sanction is appropriate unless the state has breached a known duty.

When the defendant wants the ampoule used in testing his breath produced by the state, there must be a specific request made for its production for testing. There is no legally acceptable excuse for the lack of a specific demand for its production under the discovery rule, since the defendant knows as well as the prosecution of the existence and potential value of the ampoule. The value is not in redoing the breathalyzer test, since it is conceded the test cannot be reperformed; the value is, however, in testing the ampoule's chemical volume, mixture and perhaps the glass of the ampoule itself.

The rules of criminal procedure serve the basic and necessary function of providing uniformity and regularity. For the state, established procedures provide guidelines to determine what evidence is competent and when its production is permissible or compulsory. For the defendent, the procedures are necessary to facilitate preparation of a defense and protection of the defendant's rights. The rules have been carefully developed by common and statutory law to their present state; each rule represents a balancing of interests and must therefore be assiduously adhered to. The discovery rules require production of evidence in advance of trial to assure a fair and complete adjudication.[4] The motion to suppress, on

---

[4] "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .' *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

the other hand, is for the protection against the use at trial of evidence not obtained pursuant to constitutional or statutory mandates.

The issue of *Booth's* retroactivity should not have been reached by the court of appeals in this case. The defendant never specifically requested the breathalyzer ampoule; therefore, the state could not have denied him his constitutional rights by failing to produce it.

If the *Booth* decision suggested to the defendant's attorney that the ampoule, which he had not earlier requested, could be useful, he should have sought permission pursuant to sec. 971.31(5)(a), Stats., to make a late discovery motion.

We do not comment on the court of appeals statements regarding retroactive application of the *Booth* decision since this case did not involve that issue. Nor do we comment on the burden placed on the state to show nonmateriality of the destroyed evidence since we hold retroactive application is not an issue in this case.

*By the Court.*—The decision of the court of appeals is reversed.

CECI, J., took no part.