STATE of Wisconsin, Plaintiff-Respondent,

v.

Diane PETRONE, nee Roeker, Defendant-Appellant.†

Court of Appeals

*No. 91-0055-CR. Submitted on briefs September 27, 1991.—Decided December 18, 1991.*

(Also reported in 479 N.W.2d 212.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Waring R. Fincke* of *Dvorak & Fincke, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J. Diane Petrone (Diane) appeals from a judgment convicting her of perjury,[1] contrary to sec. 946.31(1)(c), Stats., and imposing as a con-

---

[1] The information charged that Diane had committed perjury, as a party to a crime, contrary to secs. 946.31(1)(c) and 939.05(1), Stats. The judgment of conviction similarly recites that the offense was perjury, as a party to a crime. However, the record indicates that at an in-chambers conference, the assistant district attorney, defense counsel and the trial court agreed that the charge more properly should be perjury, with Diane as a principal. The record further reveals that the jury was not given a party to a crime instruction. Our affirmance of Diane's conviction should not be construed to preclude an amendment to the judgment of conviction in accord with the instructions if either party or the trial court deems it appropriate.

dition of probation that she not work as a nude dancer. Diane was accused of falsely testifying at a John Doe proceeding that she, and not her husband, Jerry Petrone (Jerry), took nude photographs of herself and other females. On appeal, Diane raises three issues: (1) whether the evidence adduced at trial is sufficient to support the conviction; (2) whether the judge presiding over the John Doe proceeding was properly appointed as a reserve judge; and (3) whether the trial court erred in requiring as a condition of probation that she not work as a nude dancer. We are not persuaded by Diane's first two arguments and we affirm the judgment in those respects. Because the state does not oppose Diane's argument regarding the condition of probation, we modify the judgment to eliminate that provision.

Diane's conviction arose out of an incident which took place on July 29, 1987, in which her employer and then husband-to-be Jerry took a number of nude and semi-nude photographs of her, Carol Williams, and three minor females—J.J.G., T.M.K. and J.M.R.—in and about Jerry's Delavan residence.

On August 6, 1987, sheriff's officers obtained and executed a search warrant on Jerry's residence. Officers found three rolls of undeveloped 35mm film and several "polaroid type" photographs of Diane, Williams and the three minors posing clothed, nude and semi-nude. The rolls of 35mm film were later developed; they too contained photographs of Diane, Williams and the three minors in nude and semi-nude poses.[2]

---

[2]In another action arising out of the events of July 29, 1987, Jerry challenged the seizure of the undeveloped film from his home as violative of the Fourth Amendment to the United States Constitution. The Wisconsin Supreme Court ruled the seizure was not outside the scope of the warrant. *See State v. Petrone,*

On August 10, 1987, J.J.G. told a Walworth County Sheriff's Department detective that on July 29, Jerry had taken nude and semi-nude photographs of her, T.M.K., J.M.R., Williams and Diane. About a week later, T.M.K. also spoke with the detective; T.M.K.'s story matched J.J.G.'s.

More interviews followed. Jerry maintained that he did not take any photographs and, further, that he was not present when the photographs were taken. For their part, Diane and Williams echoed Jerry's story, adding that while they all took pictures of each other, a third adult woman, Shelly Soukup, took most of the pictures. At the time, Diane, Williams and Soukup were all employed by Jerry at his entertainment establishment.

On September 8, 1987, a John Doe proceeding was held before the Honorable Leander J. Foley, Jr., reserve circuit court judge, to determine who might have taken the photographs. Diane testified that Jerry took a few photographs of the subjects when they were clothed, but that he took none of the nude and semi-nude photographs. Diane further testified that everyone who was present during the picture taking—including herself—took some pictures, but that Soukup took most of the pictures. Diane was shown a number of photographs and asked to state who took each one. In some instances, she indicated that she was the photographer.

Following the John Doe proceeding, Jerry and Diane were each charged with three counts of sexual exploitation of children, contrary to sec. 940.203, Stats. (1987–88),[3] for allegedly photographing minors engaged in sexually explicit conduct. On December 6, 1988, the

161 Wis. 2d 530, 468 N.W.2d 676, *cert. denied,* — U.S. —, 112 S. Ct. 339 (1991).

[3]Section 940.203, Stats. (1987–88), was repealed and recreated as sec. 948.05, Stats., by secs. 29, 30 and 55, 1987 Wis. Act

day Diane's trial was to begin, she gave a statement to sheriff's deputies and the assistant district attorney in exchange for the withdrawal of the charges against her. Diane stated that she took none of the pictures snapped on July 29 and that with a few possible exceptions, Jerry took all of the pictures that day. Diane stated that she lied at the John Doe because she was "just trying to protect [Jerry]." Jerry was adjudged guilty of all three counts on December 14, 1988.

Diane was charged with committing perjury at the John Doe proceeding and, following a jury trial, was convicted. The state put on two witnesses—the investigating detective from the sheriff's department and J.J.G.[4] Diane did not testify; the photographs were introduced into evidence through J.J.G. Diane's John Doe testimony was read into evidence by the detective and the assistant district attorney.

## Sufficiency of Evidence

Diane's first contention on appeal is that the evidence adduced at trial is insufficient to support a conviction for perjury beyond a reasonable doubt. In reviewing the sufficiency of the evidence to support a conviction, we may not substitute our judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v.*

332, effective July 1, 1989. All citations hereinafter to sec. 940.203 refer to the 1987–88 version.

[4]At the time of the trial, J.J.G. had married and taken her husband's surname. We continue to refer to her as J.J.G., however, to avoid confusion and because the change of name is not germane to the issues on appeal.

*Poellinger,* 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–88 (1990). If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, this court may not overturn the verdict. *Id.* at 507, 451 N.W.2d at 758.

In obtaining a conviction for perjury against Diane, the state had to prove five elements beyond a reasonable doubt: (1) that Diane orally made a statement while under oath; (2) that the statement was false when Diane made it; (3) that Diane did not believe the statement was true when she made it; (4) that Diane made the statement in a proceeding before a judge; and (5) that the statement was material to the proceeding. *See* Wis J I—Criminal 1750.

Diane's argument is complex and difficult to follow. It does not, at first blush, appear to be couched in terms of any particular element or elements of the crime of perjury. Regardless, Diane argues that there is an insufficient "nexus" between the photographs shown to her at the John Doe and the photographs introduced at her perjury trial. She develops this argument by way of a dizzying discussion of the differences between the number of, and numbering system for, the pictures presented at the John Doe and at the perjury trial.

Specifically, Diane argues that because "there were a significantly larger number of photographs on which [she] was never examined at the John Doe than were identified by J.J.G." at her trial, the state failed "to establish that the pictures which [she] claimed to have taken in her John Doe testimony were the same photos which J.J.G. testified to at trial were taken by [Jerry]." "Without this link," maintains Diane, she "could not be found to have lied at the John Doe when she claimed to

have taken those photos she identified at that proceeding."[5]

Thus, although couched in terms vaguely suggestive of a chain of custody problem, Diane seems to be arguing that the state failed to prove her testimony was false because it did not prove that she did not take the pictures she said she took. We therefore construe Diane's argument as traveling to the falsity element of perjury.

The fatal flaw in Diane's argument is that she suggests her role as a witness in the John Doe was confined to going through the photographs one by one and picking out those in which she was the photographer. Put differently, Diane's argument fails for the simple and ironic reason that the photographs themselves have no *direct* bearing on the issue of whether she lied at the John Doe.

At the John Doe proceeding, Diane was asked many questions about who took the pictures. Some of these questions did not involve reference to, or identification of, specific pictures. Diane's perjured testimony involved her responses to this latter type of question. Before she was shown any photographs, Diane was asked about the sequence of events for the day generally and the photo session in particular. Diane testified that the photo session began with a series of pictures taken in front of a

[5]Diane builds the same argument on differences in the numbering *system* for the photographic exhibits introduced at the John Doe and at her trial. Diane argues that because no photograph had the same exhibit number at both the John Doe and the perjury trial, the state failed to establish that the photographs Diane testified at the John Doe that she took were the same photographs J.J.G. testified at Diane's perjury trial that Jerry took. Whether based on the sheer number of photographs or the state's method of numbering the photographs, Diane's argument fails for the reasons stated hereinafter.

gazebo in the yard. More photographs in other settings followed: first the lakefront, then inside the house, then the lakefront a second time. The session concluded with a series of pictures taken on Jerry's boat. Diane further testified that Jerry "took maybe one" photograph at the gazebo and that she and J.M.R. took the remaining gazebo pictures. Diane also told the John Doe assemblage that the lakefront pictures were taken by Soukup, that the house pictures were "all of us . . . taking pictures of everybody," and that the boat pictures were taken by J.M.R. and Soukup.

However, in her post-John Doe statement to the detective and the assistant district attorney, Diane admitted that Jerry had taken most, if not all, of the photographs. Herein lies the "smoking gun" for Diane's conviction. Diane glosses over this highly incriminating evidence and, instead, seeks to create uncertainty by suggesting confusion as to whether certain specific photographs alluded to at the John Doe were the same ones alluded to at the trial. Even if some uncertainty or confusion existed, the gravamen of the offense lies in Diane's sworn John Doe testimony that Jerry took none of the nude photographs followed by her admission to the authorities that her testimony was false. We conclude the state proved Diane gave false testimony at the John Doe. The evidence is sufficient.

### Properly Appointed Judge

By postconviction motion, Diane requested, *inter alia,* that the judgment of conviction be vacated because Judge Foley, the reserve judge who conducted the John Doe proceeding, had not previously been appointed by the chief justice of the Wisconsin Supreme Court pursu-

ant to sec. 753.075(1), Stats. This statute defines a permanent and temporary reserve judge as one who has been appointed by the chief justice to serve in such capacity. Posttrial, Diane established that Judge Foley had applied for reserve judge status and had been assigned by the Director of State Courts to conduct the instant John Doe proceedings pursuant to SCR 70.10 (Callaghan 1990). However, Diane contended, and the state conceded, that the chief justice had not directly appointed Judge Foley as a reserve judge.

The trial court denied Diane's motion, ruling that Judge Foley had been properly appointed, and, alternatively, that if any defect existed, such was not fatal to the conviction. Diane appeals, asking that we grant her a new trial in the interests of justice.[6] She argues that both "appointment" by the chief justice under sec. 753.075(1), Stats., and "assignment" by the Director of State Courts under SCR 70.10 are necessary to a valid appointment of a reserve judge. She cites to authorities from other jurisdictions in support of her argument.

We need not, however, range so far from Wisconsin law to address the effect of Judge Foley's appointment (valid or not) on Diane's conviction. The perjury statute,

---

[6]If Diane is correct on this issue, we question whether a discretionary reversal for a new trial would be the proper remedy. Depending upon the type of proceeding involved, it is an element of perjury that false testimony be given before one of several types of presiding officials. *See* sec. 946.31(1)(a)–(h), Stats. It is axiomatic that a failure of proof, for whatever reason, on an element of a criminal offense renders any resultant conviction *per se* invalid. *See In re Winship,* 397 U.S. 358, 364 (1970). Therefore, if Diane prevailed on this issue, we suspect that she is entitled to an outright reversal and dismissal for want of proof as to an essential element of the offense.

sec. 946.31, Stats., directly answers the question. The statute states in relevant part as follows:

> **(1)** Whoever under oath or affirmation orally makes a false material statement which the person does not believe to be true, in any matter, cause, action or proceeding, before any of the following, *whether legally constituted or exercising powers as if legally constituted,* is guilty of a Class D felony:
>
> (c) A judge, referee or court commissioner . . ..
> [Emphasis added.]

On its face, the statute clearly and unambiguously contemplates perjury as an actionable offense whether the judge in question is wielding *de jure* or, as Judge Foley here, *de facto* power over the conduct of the proceedings.

Our reading of the statute is borne out by the Wisconsin Criminal Jury Instruction Committee's comment to Wis J I—Criminal 1750, the pattern perjury instruction pertaining to this offense. The committee's comment suggests that the following additional instructional language be given where the authority of the officer conducting the proceeding is questioned:

> A de facto [officer] refers to one that exists, operates and must be accepted for all practical purposes as [an officer] with lawful authority but for some reason or other the [officer], in a strict or technical sense, does not have such lawful authority. By contrast, a de jure [officer] has lawful authority in every respect. *As used in connection with this offense, there is no reason to distinguish between de jure and de facto.*[7]
> [Emphasis added.]

---

[7]The jury instruction comment cites to V *1953 Judiciary Committee Report on the Criminal Code,* at 184 (February 1953), as support for its suggested instruction.

Since sec. 946.31, Stats., clearly and unambiguously contemplates the prosecution of perjury for testimony given before a *de facto* officer, we need not address Diane's contention that technical flaws existed in Judge Foley's appointment as a reserve judge. The state met its burden of proof as to all elements of the offense. Diane's conviction stands in all respects.

## Condition of Probation

Diane challenges the condition of probation that she not perform as a nude dancer at Jerry's entertainment lounge. This issue has a somewhat tortuous history. Although the state sought a prison sentence without probation, the trial court imposed and stayed a five-year sentence and placed Diane on probation for five years. Along with other conditions of probation, the court imposed a six-month period of confinement in the county jail.

At the time of her sentencing, Diane was employed at Jerry's entertainment lounge where she helped manage the premises, tended bar and performed as a dancer. For the first forty-five days of this period, the trial court denied Diane work release privileges. Thereafter, the court allowed Diane work release privileges, permitting her to resume employment at Jerry's lounge. However, the court concluded that it would be inappropriate for Diane to perform as a nude dancer while on work release privileges. Therefore, the court directed that Diane was not to perform as a nude dancer during her work release term.[8] Although the court's comments were principally directed at Diane's nude dancing while on work release,

[8]The trial court did state, however, that Diane could dance wearing a "swimming suit."

the court ultimately made the prohibition a condition of probation. The state did not seek or request this prohibition as a condition of Diane's work release or probation.

Following the completion of her work release jail term, Diane asked the trial court to remove this condition of probation. The court indicated that it had "no strong feelings" on the matter, stating that it had been more concerned about the activity during Diane's work release term than during her probation. The state indicated that it had not sought this prohibition and had no objection to the court vacating this condition of probation. Accordingly, the court removed the prohibition as a condition of probation.

Later, however, in conjunction with a motion on bail pending appeal, the trial court *sua sponte* reimposed this prohibition as a condition of probation. On appeal, the state reads the court's action as one which solicits an academic opinion from us as to the propriety of such a condition of probation. As such, the state reiterates its trial court posture on this issue: it did not seek this condition of probation, it does not seek to enforce it and it has no objection to Diane's request that this condition of probation be vacated.

██

We sometimes encounter cases where the trial court's ruling is not defended by either party on appeal. We, nonetheless, oftentimes address such a ruling on the merits. Here, however, the state never sought this condition of probation and declines to defend it on appeal. More importantly, the state tells us that it will neither seek to enforce this condition of probation nor prosecute for its violation. In fact, the state recites on appeal that "it has no objection to modification of the conditions of probation to eliminate that restriction." When we additionally consider that the trial court's substantive

remarks considering this issue were principally aimed at Diane's work release conditions—not the conditions of her probation—we question whether our review of the question on the latter ground would be fair to the trial court.[9]

For this combination of reasons, we decline to address the issue on its merits. On remand, we direct that the judgment of conviction be modified to eliminate this condition of probation.

*By the Court.*—Judgment affirmed in part; modified in part and, as modified, affirmed.

---

[9]We do not hold that a trial court may not impose its own conditions of probation *sua sponte*. Nor do we preclude the trial court in this case from imposing this, or any other, reasonable and appropriate condition of probation. *See* sec. 973.09(1), Stats. We do hold that if appellate review of such a condition is to occur, it should be with some confidence on our part that the court truly focused on the need for the restriction as a reasonable and appropriate condition of probation—and not as a condition of some other facet of the sentence.