STATE of Wisconsin, Plaintiff-Respondent,†

v.

Debra NOBLE, Defendant-Appellant.

Court of Appeals

*No. 99–3271–CR. Oral argument December 4, 2000.—Decided May 24, 2001.*

## 2001 WI App 145

(Also reported in 629 N.W.2d 317.)

†Petition to review granted.

537

538

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeff Brinckman* of *Brinckman Law Office, S.C.* of Prairie du Chien.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Dykman, P.J., Roggensack and Mason, JJ.[1]

¶ 1. DYKMAN, P.J. Debra Noble appeals from a judgment convicting her of perjury. While she identifies seven issues, many are interconnected. We conclude that there are three issues we need to address. These are: (1) Was the evidence sufficient to convict her? (2) Was she denied due process of law because the State's investigator destroyed the notes of his investigation? and (3) Should the transcript of a John Doe proceeding that formed the basis for the perjury charge be excluded because the person who questioned her at the John Doe was not authorized to practice law?

¶ 2. We conclude that the evidence was sufficient to convict. We also conclude that the destruction of the investigator's notes did not deny Noble due process of law. We finally conclude that the correct sanction for the unauthorized practice of law is exclusion of the John Doe transcript. We therefore reverse and remand for proceedings consistent with this opinion.

[1] Circuit Judge James Mason is sitting by special assignment pursuant to the Judicial Exchange Program.

¶ 3. The facts underlying Noble's conviction are not complicated. Prairie du Chien police suspected drug activity at "Rowdy's" bar, and raided it on April 2, 1999. Debra Noble was present when the raid occurred, but her husband Dan had left just prior to the raid. After the raid, Dan received a telephone call in which he was told something to the effect of "back off, or you are a dead man." Debra and Dan concluded that drug dealers believed that Dan was a police informant because he had left the bar just before the raid. They were frightened and notified the police of this threat.

¶ 4. On April 9, 1999, a state narcotics enforcement agent, David Matthews, and a Prairie du Chien police detective questioned Debra about drug activity at the bar. Matthews took notes of the conversation, which he destroyed after preparing a written report. According to the detective and Matthews, Debra told them about drug trafficking at the bar, including that she had been present when her husband bought cocaine from a bartender, and that he had done so for the past two years.

¶ 5. On April 23, 1999, Judge Kirchman convened a WIS. STAT. § 968.26 (1999–2000) John Doe inquiry.[2] We have only a partial transcript of the inquiry's proceedings, which shows the following:

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. WISCONSIN STAT. § 968.26 provides in part:

> If a person complains to a judge that he or she has reason to believe that a crime has been committed within his or her jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him or her and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed. The extent to which the judge may proceed in the examination is within the judge's discretion. The examination may be

THE COURT: All right. I'm going to permit other persons here to ask some questions of you to get to the facts which are sought to be disclosed here. Mr. Matthews then?

MR. BAXTER [The District Attorney]: Yes, Your Honor. As we discussed earlier, Special Agent David Matthews from the Department of Justice will be conducting the examination. Sir.

SPECIAL AGENT MATTHEWS: Thank You.

EXAMINATION BY SPECIAL AGENT MATTHEWS:

Q: Ms. Noble, I want to pretty much focus on things that we had an opportunity to discuss at your place of employment on April 9th, at Cabela's. Do you recall . . . .

¶ 6. Matthews questioned Noble about their conversation of April 9, 1999.[3] Noble denied telling Matthews about drug trafficking at the bar. His questions of her at the John Doe inquiry and her answers to those questions are the basis of the perjury charge against her.

adjourned and may be secret. Any witness examined under this section may have counsel present at the examination but the counsel shall not be allowed to examine his or her client, cross-examine other witnesses or argue before the judge. If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint may be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused.

[3] It is not surprising that no one objected to Matthews asking questions. Though Noble's attorney was present at the John Doe inquiry, the trial court explained that although Noble could confer with her attorney, the attorney could not participate in the inquiry. *See* WIS. STAT. § 968.26. A John Doe judge may even exclude a witness's attorney. 18 Op. Atty. Gen. 563 (1929).

## SUFFICIENCY OF THE EVIDENCE

¶ 7. This was not a perjury trial where the State alleged that a defendant lied when, at a John Doe inquiry, he or she denied committing a crime. Instead, the State is asserting that Noble lied at the John Doe inquiry when she denied telling the detective and Matthews about drug trafficking at the bar. Thus, to obtain a conviction, the State was required to convince the jury that the police officers were telling the truth about their April 9 conversation with Noble, and that she lied at the John Doe inquiry when she denied telling them any information about drugs.

¶ 8. *State v. Petrone*, 166 Wis. 2d 220, 226, 479 N.W.2d 212 (Ct. App. 1991), set out the elements of the crime of perjury: (1) An oral statement while under oath; (2) The statement was false when made; (3) The defendant did not believe that the statement was true when he or she made it; (4) The statement was made in a proceeding before a judge; (5) The statement was material to the proceeding. Noble concedes that she made the statements attributed to her while under oath and that they were made in a proceeding before a court.

¶ 9. We may not reverse a criminal conviction for insufficiency of evidence unless the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. DeRango*, 229 Wis. 2d 1, 30, 599 N.W.2d 27 (Ct. App. 1999), *aff'd*, 2000 WI 89, 236 Wis. 2d 721, 613 N.W.2d 833. The State's evidence was sufficient to pass this test.

542

*False When Made*

¶ 10. Noble asserts that there is no way to know whether she was merely repeating hearsay on April 9, and that there is no way to know whether the April 9 statements attributed to her were true or false. She also focuses on Matthews' trial testimony that her statements on April 9 were "inconsistent" with her testimony at the John Doe inquiry. But whether Noble's April 9 statements are true or not is irrelevant. She was asked at the John Doe inquiry whether she made certain statements on April 9. She either made the statements attributed to her or she did not. If she did not make the statements on April 9, then her testimony at the John Doe inquiry was true. If she made the April 9 statements attributed to her, then her John Doe testimony that she did not make the statements was false when made.

¶ 11. Noble also asserts that because Matthews did not tape record the April 9 interview or have a court reporter present, or require her to sign a written statement, Matthews' testimony as to what she said was at best a paraphrase of what she really said, and insufficient to show a false statement. But Noble cites no authority requiring a tape recording, a transcript, or a signed statement to show the falsity of a statement. In *State v. Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370 (Ct. App. 1980), we said that arguments unsupported by relevant authority were inadequate and do not comply with WIS. STAT. § 809.19(1)(e), and that we would refuse to consider such arguments in the future. If there is relevant authority holding that only evidence that is tape recorded, transcribed, or signed by a defendant is sufficient to support a perjury conviction,

Noble has failed to cite it. We see no reason to depart from *Shaffer* now.

¶ 12. As to Noble's "inconsistent" assertion, that too overstates what occurred. Matthews did testify that Noble's statements on April 9 were "inconsistent" with her John Doe testimony. But when Matthews was asked at trial to explain this inconsistency, he did so with exactitude. He testified: "On April 9 she described the relationship in which Jean Mattos was the source of cocaine for Dan Noble. And had been for a period of time." Noble's testimony at the John Doe inquiry was to the contrary:

> Q. Okay. Do you deny telling us now that Dan had been getting cocaine from Bobbie Jean Serrano and her mother Jean Mattos for two years?
>
> A. I don't know anything about this.
>
> Q. So you deny telling us that on that date?
>
> A. Yes, I do.

A reasonable jury could believe Matthews as to what Noble told him on April 9, and conclude beyond a reasonable doubt that her John Doe testimony was false when made.

*Knowing Falsehood*

¶ 13. Noble selectively quotes from questions asked of her at the John Doe inquiry. She argues from those questions that the State did not prove that she knew her statements were false when she made them. But this is not the test. We do not examine the record, as Noble has, to find evidence that she did not know of

her false statement. *See Staehler v. Beuthin*, 206 Wis. 2d 610, 617, 557 N.W.2d 487 (Ct. App. 1996). Noble has the test backwards. We examine the record to find evidence to support the jury verdict. *Id.* The following excerpts show that a reasonable jury could have concluded beyond a reasonable doubt that Noble knew that what she testified to at the John Doe inquiry was false. The questions were asked at trial by the district attorney, and the answers were given by Matthews:

Q: Can you tell us a little bit about what she [Debra Noble] said along those lines?

A: She said that on that afternoon, prior to the police arriving, that she was with her husband Dan Noble at Rowdy's Bar and that she was present when he made contact with Jean Boland in order to obtain 1/8 ounce of cocaine and that he had ordered a week earlier, and that Dan wasn't there when the police came in because he had gone to get money to pay for that cocaine.

. . . .

Q: Okay. Did Miss Noble give you any information or make any statement regarding an actual offer that she overheard by Jean Boland to her husband Dan?

A: Yes, she did.

Q: Go ahead, please.

A: She said that Jean Boland had actually offered to sell Dan two 1/8 quantities, or 8-balls as she referred to them, of cocaine and that she had interjected herself into that and essentially prohibited Dan from doing that and said that he could only get the one. She didn't want him to get two.

545

We contrast this testimony with Noble's testimony at the John Doe inquiry.

> Q: [of Debra Noble] Could you tell us now, what was the relationship that Dan had with Jean [Boland]?
>
> A: He was—she's a bartender there.
>
> Q: Do you know of any involvement between the two of them with respect to controlled substances?
>
> A: No, I don't.
>
> . . . .
>
> Q: Okay. My recollection was that you told us Dan had ordered cocaine from Jean Boland a week prior to April 2nd and that on April 2nd he was there to pick up the drugs that he had ordered a week earlier. Do you deny telling us that?
>
> A: I don't know what you're talking about.
>
> Q: Do you deny telling us that?
>
> A: Yes.

¶ 14. Noble engages in semantic disputes as to the meaning of "recollection" and "know." She asserts that some of the questions involved hearsay, and speculates that the jury did not know the difference between "hearsay" and "personal knowledge." She is concerned that Matthews' testimony paraphrased her April 9 statements. This is at best a red herring, especially since Noble cites no authority for her assertions. *See Shaffer*, 96 Wis. 2d at 545–46. The questions and answers we have quoted are not difficult to understand, and can be understood by persons of average intelligence. Matthews asked Noble about drug dealing

at Rowdy's bar when he interviewed her on April 9. She made specific answers that indicated beyond any doubt that she knew a great deal about the purchase and sale of cocaine, and that her husband was involved in the transactions. When questioned two weeks later at the John Doe inquiry, Noble denied knowledge of drug dealing at the bar. There are only two conclusions one can draw from the material we have quoted. Either Matthews was lying at trial or Noble was lying at the John Doe inquiry. If, as the jury concluded, Matthews was telling the truth, the jury was easily entitled to infer that Noble knew she was telling a lie at the John Doe inquiry.

*Materiality*

¶ 15. Noble cites no authority for her assertions that because Arlene Melvin was the target of the John Doe proceeding, evidence concerning others was not material to the inquiry. We have explained that *Shaffer*, 96 Wis. 2d at 545–46, condemns this type of argument, and we again see no reason to depart from *Shaffer* now. And we see no logic in Noble's view that a John Doe inquiry is designed to determine whether a particular individual has committed a crime when the supreme court has concluded that a John Doe complaint need not name a particular accused. *See State v. Washington*, 83 Wis. 2d 808, 822, 266 N.W.2d 597 (1978). Noble has failed to show, in the trial court or here, that the only person pinpointed in the John Doe complaint was Melvin, and that drug dealing at Rowdy's was not a concern of the inquiry. To the contrary, a Prairie du Chien detective testified that the subject matter of the John Doe inquiry was a Crawford County drug ring that operated, at least in part, from

the bar frequented by Noble and her husband. There was sufficient evidence to show that Noble's John Doe testimony was material to the investigation.

## DESTRUCTION OF EVIDENCE

¶ 16. Noble next contends that her right to due process was violated because Matthews destroyed his original notes of the April 9 interview with her. According to Noble, the notes were exculpatory because they would have shown that her testimony at the John Doe was consistent with her statements to Matthews during the April 9 interview.

¶ 17. A defendant's right of pretrial access to exculpatory evidence needed to prepare a defense is protected by the Due Process Clause of the Fourteenth Amendment. *State v. Greenwold*, 181 Wis. 2d 881, 885, 512 N.W.2d 237 (Ct. App. 1994). The defendant's due process rights are violated by the destruction of evidence if: (1) the evidence destroyed is apparently exculpatory and of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means; or (2) if the evidence was potentially exculpatory and was destroyed in bad faith. *Id.* at 885–86.

¶ 18. Noble has not argued that Matthews destroyed his notes in bad faith, so she must demonstrate that the evidence they contained is apparently exculpatory and of such a nature that she could not obtain it by other reasonably available means. However, she offers no reasoning to support her claim that Matthews' original notes were exculpatory other than the general assertion that the notes would have shown that she did not say what Matthews reported. She

introduced no evidence other than her testimony about the April 9 interview to establish that the notes contained exculpatory evidence, whereas Matthews testified that he used the notes to write his formal report just a few days after interviewing Noble. Before destroying the notes, he checked the report against them to ensure that the report was accurate.[4] Furthermore, the Prairie du Chien detective's recollection of what Noble said on April 9 was consistent both with Matthews' report and his trial testimony. Therefore, we conclude that Noble has not demonstrated that the notes contained any apparently exculpatory evidence.

## UNAUTHORIZED PRACTICE OF LAW

¶ 19. Noble argues that the transcript of her testimony at the John Doe inquiry should have been suppressed because the circuit court judge's decision to permit questioning by Matthews permitted the unlicensed practice of law and therefore, an abuse of the John Doe proceeding. She contends that in *State v. Cummings*, 199 Wis. 2d 721, 746, 546 N.W.2d 406 (1996), the supreme court concluded that suppression was the appropriate remedy for abuse of a John Doe proceeding. The State counters that all Matthews did was "assist" the district attorney, as was approved by the supreme court in *State v. O'Connor*, 77 Wis. 2d 261, 281, 252 N.W.2d 671 (1977), and even if his questioning constituted the unlicensed practice of law, suppression is not an appropriate remedy. We disagree with the State's characterization of Matthews' conduct and con-

---

[4] Matthews testified that he destroyed his notes pursuant to a Department of Justice policy that had been in force since 1988.

clude that it was the unlicensed practice of law, which the John Doe judge should not have permitted.

¶ 20. WISCONSIN STAT. § 757.30 describes when activities constitute practicing law without a license. It provides:

> **Penalty for practicing without license.**
>
> . . . .
>
> (2) Every person who appears as agent, representative or attorney, for or on behalf of any other person, or any firm, partnership, association or corporation in any action or proceeding in or before any court of record, court commissioner, or judicial tribunal of the United States, or of any state, or who otherwise, in or out of court, for compensation or pecuniary reward gives professional legal advice not incidental to his or her usual or ordinary business, or renders any legal service for any other person, or any firm, partnership, association or corporation, shall be deemed to be practicing law within the meaning of this section.

In Wisconsin, the unauthorized practice of law may result in dismissal of an action when it deprives a court of jurisdiction. *Jadair Inc. v. United States Fire Ins. Co.*, 209 Wis. 2d 187, 211, 562 N.W.2d 401 (1997).

¶ 21. In order to examine Noble's claim, we must determine whether Matthews' actions at the John Doe inquiry constitute the unlicensed practice of law.[5] Matthews is not a lawyer. He falls under none of the supreme court's authorized exceptions for the practice

---

[5] The district attorney is generally responsible for examining witnesses in a John Doe proceeding. *State v. Washington*, 83 Wis. 2d 808, 823 n.10, 266 N.W.2d 597 (1978). However, here, although the district attorney was present, he turned the questioning of Noble over to Matthews.

of law by nonlawyers. *See* SCR 50.03 (1982). Matthews' questioning of Noble was done at the State's behest; therefore, we conclude that when he did so he represented the State. The only question that requires some discussion is whether the John Doe inquiry was a proceeding before a court of record, a court commissioner, or a judicial tribunal of this state, as described in WIS. STAT. § 757.30(2).

¶ 22. The supreme court has already decided that a John Doe investigation is not a proceeding in a court of record. *Washington*, 83 Wis. 2d at 828. It was not conducted by a court commissioner. However, a judge who presides in a John Doe is "a judicial officer who serves an essentially judicial function." *Id.* at 823. "[T]he John Doe judge must 'conduct himself as a neutral and detached magistrate in determining probable cause which is the basic function of . . . [the] proceeding.' " *Id.* at 824. A "tribunal" has been defined as "[a] court or other adjudicatory body." BLACK'S LAW DICTIONARY 1512 (7th ed. 1999). Because the function of the presiding judge is to adjudicate whether there is probable cause to believe a crime has been committed by a given individual or individuals, we conclude that the judge is a judicial tribunal of this state during the course of a John Doe proceeding. Accordingly, because Matthews has no law license and represented the State in the John Doe proceeding by questioning Noble, he practiced law without a license.[6]

¶ 23. We disagree with the State that *O'Connor* permits Matthews' conduct. *O'Connor* involved whether the scope of the presiding judge's discretion

[6] This is a timely issue. The State Bar of Wisconsin is presently conducting statewide discussions on the future of the bar. One of the topics is the unauthorized practice of law.

551

permitted him to grant an assistant attorney general's request to have a Department of Justice law enforcement officer present when witnesses were being examined, notwithstanding the secret nature of the proceeding. *O'Connor*, 77 Wis. 2d at 280–81. There is no suggestion in *O'Connor* that the officer questioned any of the witnesses.

¶ 24. Given our conclusion that Matthews practiced law without a license, the question then is whether there is a remedy for the State's use of an unlicensed person to examine witnesses at the John Doe investigation, and if so, what that remedy should be. The violation is significant; persons who practice law without a license are guilty of a crime and may be fined $500 or jailed for a year, in addition to being held in contempt of court. WIS. STAT. § 757.30(1). We are reluctant to conclude that there is no sanction for the unauthorized practice of law at a John Doe investigation other than the remote possibility of criminal prosecution. District attorneys have great discretion in deciding whom to prosecute. *Sears v. State*, 94 Wis. 2d 128, 133, 287 N.W.2d 785 (1980). Since it is generally the district attorney who examines witnesses at a John Doe investigation, *Washington*, 83 Wis. 2d at 823 n.10, it is unlikely that after asking an unlicensed person to examine witnesses at a John Doe investigation, a district attorney would then prosecute the person who had just done so. And it is also unlikely that a John Doe judge who had just authorized a non-attorney to practice law without a license would then exercise his or her discretion by issuing a criminal complaint against the non-attorney.[7] If our conclusion that unlicensed per-

---

[7] WISCONSIN STAT. § 968.02(3) reads:

If a district attorney refuses or is unavailable to issue a complaint, a circuit judge may permit the filing of a complaint, if the

sons cannot examine witnesses at a John Doe investigation is to have future significance, there must be a sanction more significant than a determination of harmless error.

¶ 25. Suppression of evidence obtained through the unauthorized practice of law is a possible sanction. We recognize the general rule that evidence is to be suppressed only where the evidence was obtained in violation of an individual's constitutional rights. *See State v. Verkuylen*, 120 Wis. 2d 59, 61, 352 N.W.2d 668 ( Ct. App. 1984). But there are exceptions to this rule, and one exception is where the State abuses John Doe procedure.[8] Where the State uses a John Doe investigation improperly to gather evidence for use in a pending prosecution, suppression of the witness's testimony and its fruits is an appropriate remedy. *State v. Hoffman*, 106 Wis. 2d 185, 206, 316 N.W.2d 143 (Ct. App. 1982). The supreme court has recognized this remedy.

> It is only when the John Doe is used to gather evidence specifically relating to the crime for which the

judge finds there is probable cause to believe that the person to be charged has committed an offense after conducting a hearing. If the district attorney has refused to issue a complaint, he or she shall be informed of the hearing and may attend. The hearing shall be ex parte without the right of cross-examination.

[8] Another exception exists where the State fails to produce legally and properly demanded evidence in a civil proceeding. The remedy for the State's violation is evidence suppression. *See City of Lodi v. Hine*, 107 Wis. 2d 118, 122, 318 N.W.2d 383 (1982). And where the State fails to comply with a discovery order in a criminal case, evidence suppression is a possible sanction. *State v. Humphrey*, 107 Wis. 2d 107, 116, 318 N.W.2d 386 (1982).

defendant is being tried that an abuse of the proce-
dure occurs. As the court of appeals correctly
concluded in *Hoffman*, the appropriate remedy for
such an abuse of the John Doe proceeding is sup-
pression of any evidence so obtained.

*Cummings*, 199 Wis. 2d at 746.

¶ 26. Another possible sanction for the State's
unauthorized practice of law would be to exclude the
evidence obtained through its unauthorized act. While
this might appear to be identical to suppressing evi-
dence, the two are different. In *State v. Eichman*, 155
Wis. 2d 552, 562, 456 N.W.2d 143 (1990) (citations
omitted), the supreme court explained:

> [W]e agree with Mr. Eichman that there is a distinc-
> tion, albeit a fine one, between "suppressing"
> evidence and "excluding" evidence. The former gen-
> erally bars admission of evidence at trial as a result
> of governmental misconduct, such as a constitu-
> tional violation. The latter generally involves only a
> violation of the rules of evidence.

¶ 27. Though *Hoffman* examined a different
abuse of a John Doe investigation, we noted in *Hoff-
man* that the only effective remedy for the abuse was to
prohibit the government from profiting from the abuse.
*Hoffman*, 106 Wis. 2d at 206. And, as we have noted,
that is also true here. The only effective remedy for the
use of unauthorized persons in John Doe investigations
is to prohibit the State from profiting from the abuse.

¶ 28. Prosecutorial misconduct can result in a
sanction against the State, which can ultimately
include dismissal of the charges against a defendant.
*See State v. Lettice*, 205 Wis. 2d 347, 556 N.W.2d 376 (
Ct. App. 1996). In *Lettice*, a prosecutor brought crimi-

nal charges against a defendant's lawyer either to disqualify the lawyer or to delay an imminent jury trial. *Id.* at 349, 354. We concluded that this prosecutorial misconduct prejudiced the defendant in the underlying case, and we affirmed the trial court's order granting the defendant a new trial. *Id.* at 355. On a second appeal, we concluded that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prevented the defendant from being tried a second time. *See State v. Lettice*, 221 Wis. 2d 69, 79, 84–85, 585 N.W.2d 171 (Ct. App. 1998). *Lettice* was a criminal case; a John Doe investigation is not, and the district attorney's misconduct was at issue in *Lettice*, while here an investigator's unauthorized practice of the law raises the issue. But in both cases the State benefited from its unauthorized acts. It is difficult to justify a benefit resulting from an unauthorized act. Respect for the law is diminished when the person charged with enforcing the law is permitted to violate the law.

¶ 29. We are all familiar with the cases holding that the sanction when police violate a right guaranteed by the United States Constitution is suppression of evidence obtained from the violation. But we cannot directly use these cases, because cases following *Miranda v. Arizona*, 384 U.S. 436 (1966), hold that *Miranda* is an exclusionary rule reserved for criminal actions. *See Village of Menomonee Falls v. Kunz*, 126 Wis. 2d 143, 147, 376 N.W.2d 359 (Ct. App. 1985). Still, the notion that though the State is constrained by constitution and statute, it may violate both with impunity, is a notion that should concern the governed in a free society.

¶ 30. While the issue is not free of doubt, we conclude that if the choice is between sanction and no sanction, the better conclusion is that there should be a sanction when the State obtains information through the unauthorized practice of law. The unauthorized practice of law is a crime, and both the legislature and the supreme court permit only attorneys to practice law. *See* WIS. STAT. § 757.30(1); SCR 40.02 (2000) (qualifications necessary to practice law). There is no hardship, and the State ultimately benefits, when a district attorney is required to become familiar enough with a case to examine a witness at a John Doe investigation. We conclude that dismissal of a criminal complaint is an unnecessary sanction. But exclusion of a witness's testimony obtained when an unlicensed person examines a witness at a John Doe investigation properly balances the right of the State to investigate allegations of criminal conduct with the prohibitions against the unauthorized practice of law. Accordingly, we reverse Noble's judgment of conviction, and remand for a new trial. As a sanction for the State's unauthorized practice of law, we conclude that when and if Noble is re-tried, the trial court should exclude information obtained by the State's unauthorized practice of law.

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 31. ROGGENSACK, J. *(dissenting)*. While I join the majority opinion in almost all respects, because I have concluded that suppression[1] of Noble's John Doe

---

[1] The majority chooses to characterize what it does as an exclusion of evidence, but without an evidentiary objection, this

testimony, exacted by the majority for what it concludes is the unauthorized practice of law, is improper, unnecessary and contrary to binding precedent, I respectfully dissent.

¶ 32. To reach the sanction the majority applies, it first determines, without the benefit of a trial, that Matthews engaged in the unauthorized practice of law contrary to WIS. STAT. § 757.30(1); then it assumes that Matthews probably will not be prosecuted for this crime:

> We are reluctant to conclude that there is no sanction for the unauthorized practice of law at a John Doe investigation other than the remote possibility of criminal prosecution. District attorneys have great discretion in deciding whom to prosecute. . . . [I]t is unlikely that after asking an unlicensed person to examine witnesses at a John Doe investigation, a district attorney would then prosecute the person who had just done so.

Majority at ¶ 24. The majority then reasons, "[W]e conclude that if the choice is between sanction and no sanction, the better conclusion is that there should be a sanction when the State obtains information through the unauthorized practice of law." Majority at ¶ 30.

¶ 33. As a preliminary matter, I conclude that it is improper to apply a sanction to the State when a violation of WIS. STAT. § 757.30(1), the unauthorized practice of law, has not been proven at trial. Second, prosecution is not solely within the discretion of the district attorney as the majority opinion asserts. The John Doe statute, WIS. STAT. § 968.26,[2] requires a judge

---

is not an exclusion, it is a suppression. *See Ware v. State*, 201 Wis. 425, 427, 230 N.W. 80, 81 (1930).

 [2] WISCONSIN STAT. § 968.26 states in relevant part:

to examine a complainant in a John Doe petition under oath, as well as any witnesses produced by that complainant, "once a John Doe complainant has shown that he or she has reason to believe that a crime has been committed." *Reimann v. Circuit Court for Dane County*, 214 Wis. 2d 605, 615, 571 N.W.2d 385, 388 (1997). It is possible that the assistant district attorney who invited Matthews to participate in the John Doe proceeding that formed the basis for testimony used later in Noble's perjury trial will refuse to file a complaint against Matthews. If so, Noble, her attorney or any other concerned citizen could file a John Doe petition with the circuit court alleging "objective, factual assertions sufficient to support a reasonable belief that a crime has been committed" by Matthews. *Id.* at 623, 571 N.W.2d at 391. The circuit court would then question witnesses, review the evidence presented and determine whether to issue a complaint and a warrant for Matthews's arrest. As the supreme court instructed, "The John Doe procedure we adopt today gives citizens access to an impartial and neutral jurist for review of their criminal complaints." *Id.* at 624, 571 N.W.2d at 392. Therefore, there are more than the two choices of suppression or no consequences for Matthews's conduct at the John Doe that the majority's opinion presents.

¶ 34. Third, the sanction of suppression of evidence obtained through the John Doe proceeding is

> If a person complains to a judge that he or she has reason to believe that a crime has been committed within his or her jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him or her. . . . If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint may be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused.

contrary to long-standing precedent, initially set forth by the supreme court in *Ware v. State,* 201 Wis. 425, 230 N.W. 80 (1930), and reaffirmed many times thereafter, most recently by this court in *Peckham v. Krenke,* 229 Wis. 2d 778, 601 N.W.2d 287 (Ct. App. 1999).

¶ 35. In *Ware,* a woman had been convicted of adultery based on her diary, which her husband had stolen and turned over to police for her prosecution. The supreme court refused to exclude the diary as evidence of her crime, even though it agreed the diary had been wrongfully obtained. It explained, "[t]he doctrine of the exclusion of evidence illegally obtained should be confined strictly to those cases where the procuring of the evidence has violated some constitutional right of the defendant." *Ware,* 201 Wis. at 427, 230 N.W. at 81. In *State v. Mieritz,* 193 Wis. 2d 571, 534 N.W.2d 632 ( Ct. App. 1995), a police officer's role in the cocaine purchase used to convict Mieritz was held to have been improper, but the evidence was not excluded because the officer's actions violated none of Mieritz's constitutional rights. *Id.* at 574, 534 N.W.2d at 633. Furthermore, the *Ware* rule, that suppression is not available as a sanction unless a constitutional violation has occurred, is also applied in civil proceedings. *Peckham,* 229 Wis. 2d at 787, 601 N.W.2d at 292 (citations omitted). "In summary, . . . the exclusionary rule is applicable in civil and criminal proceedings only where the evidence sought to be excluded was obtained in violation of a constitutional right or a statute that specifically requires suppression of wrongfully or illegally obtained evidence as a sanction." *Id.* (citations omitted). While the majority opinion tries to get around this clear precedent with *obiter dicta* from *State v. Hoffman,* 106 Wis. 2d 185, 316 N.W.2d 143 (Ct. App. 1982), and from *State v. Cummings,* 199 Wis. 2d 721,

546 N.W.2d 406 (1996), I cannot. Accordingly, I respectfully dissent.