STATE of Wisconsin, Plaintiff-Appellant,

v.

Eugene P. GREENWOLD, Defendant-Respondent.

Court of Appeals

*No. 93–2133–CR. Submitted on briefs December 14, 1993.—Decided January 11, 1994.*

(Also reported in 512 N.W.2d 237.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney

general, and *Barbara L. Oswald,* assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mary E. Waitrovich,* first assistant state public defender.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. The State appeals an order dismissing the State's charges of homicide by the intoxicated use of a motor vehicle and homicide by operation of a motor vehicle with a blood alcohol level of .1% or more. *See* § 940.09(1), STATS., 1989-90. The State argues that the trial court applied the wrong legal standard by concluding that Eugene Greenwold's due process rights were violated when the State failed to preserve certain evidence. Because the trial court failed to apply the standards set forth in *Arizona v. Youngblood,* 488 U.S. 51 (1988), we reverse the order of dismissal and remand for proceedings consistent with this decision.

The one-car rollover occurred on September 9, 1990. Julie Murray, seriously injured, was discovered several feet from the car. Greenwold, who was also injured, had flagged down a passing motorist. Before her death on September 11, Murray, who owned the car, is alleged to have given conflicting accounts whether she or Greenwold was driving.

The officers arriving at the scene conducted a limited investigation of the accident. Because of the way in which Murray appeared to have been ejected from the vehicle, the officers concluded Murray was the passenger and Greenwold was the driver. The officers did not inspect the vehicle for blood at that time. The vehicle

was removed to an impound shed, which was neither heated nor air-conditioned.

The officers conducted a more extensive investigation on September 18, 1990. They noticed blood spots on the car's interior but did not collect samples at that time. Other claimed omissions in the investigation were that the officers did not photograph paint left on rocks or record where broken glass was found. On February 25, 1991, the officers obtained a search warrant to take samples from the car that was still in the impound shed. On March 12, 1991, another search warrant was issued to collect blood and hair samples from Greenwold. These samples, along with those taken from the car, were sent to the state crime lab for analysis.

The state crime lab reported that human blood was detected on the samples, but because test results were inconsistent, the particular blood type was unknown. The forensic scientist who testified reported that age alone would not produce the inconsistent test results, but rather negative test results. She suggested that the type of fabric or the fact that it had been touched by several people could account for the inconsistent results. She also testified that temperatures in excess of seventy or eighty degrees could have had a detrimental effect on blood samples. However, in this case, she did not have an explanation for the inconclusive test results.

Relying on *State v. Hahn,* 132 Wis. 2d 351, 392 N.W.2d 464 (Ct. App. 1986), the trial court granted Greenwold's motion to dismiss the charges on the ground that because the State failed to preserve potentially exculpatory evidence, it violated Greenwold's due process rights. Greenwold, who does not dispute being in the car, claims that he was not driving and that the

blood samples would have aided in establishing this defense. There was no allegation, however, that the State deliberately concealed information. Rather, as stated by the trial court, "There's no need and no wish on the part of the Court to point accusing fingers to the officers" for the way they conducted the investigation, and that the "State's failure to preserve that evidence can be just due to inadvertence."

Nonetheless, the court found that the State had to have been aware that there was an issue as to who was driving and that because the State had control over the car, it had a duty to preserve the evidence. It found that the investigative delay caused the test results to be inconclusive, a finding not challenged on appeal. The trial court concluded that Greenwold's due process rights were violated and dismissed the charges.

Relying on *Youngblood,* a case that neither party brought to the trial court's attention, the State argues that the trial court erroneously dismissed the action by applying the wrong legal standard.[1] We agree. Whether the trial court applied the proper legal stan-

---

[1] Greenwold contends that the State waived this issue by failing to cite *Youngblood* to the trial court. We disagree. The state argued at the motion hearing that it did not have a due process duty to preserve the evidence because it was only possibly exculpatory, not apparently exculpatory. Thus, the State is not raising a new issue, but citing a new authority for its contention that Greenwold's due process rights were not violated. In any event, because this issue presents a question of law, we may choose to consider it for the first time on appeal. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980); *State v. Schwegler,* 170 Wis. 2d 487, 499 n.5, 490 N.W.2d 292, 297 n.5 (Ct. App. 1992).

dard is a question of law that we review de novo. *Hahn,* 132 Wis. 2d at 356-57, 392 N.W.2d at 466.

*Hahn* also involved a prosecution for intoxicated use of a vehicle. Relying on *California v. Trombetta,* 467 U.S. 469 (1984), the court in *Hahn* held that the due process clause of the Fourteenth Amendment to the United States Constitution imposes a duty on the State to preserve exculpatory evidence. *Hahn,* 132 Wis. 2d at 355-56, 392 N.W.2d at 466. *Youngblood,* decided two years later, further refines this rule.

*Youngblood* "hold[s] that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. *Youngblood* distinguished "potentially useful" evidence from "exculpatory" evidence. It observed that the due process clause makes the good or bad faith of the State irrelevant when the State fails to disclose material exculpatory evidence. *Id.* at 57-58. "But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 57. Therefore, unless the evidence was apparently exculpatory, or unless the officers acted in bad faith, no due process violation resulted.

As in *Youngblood,* Greenwold has not claimed that the officers knew the blood samples would have exonerated him; "this evidence was simply an avenue of investigation that might have led in any number of directions." *Id.* at 56 n.*. Because the exculpatory value of the blood samples was not apparent, the blood samples were only "potentially useful" evidence. Therefore,

Greenwold must demonstrate bad faith on the part of the officers to establish a due process violation.

"The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* Consistent with *Youngblood,* we reverse the dismissal and remand for proceedings consistent with this opinion. We do not interpret the trial court's reference to "mere inadvertence" as a finding of fact, but rather a reference to the legal standard that it was applying. On remand, Greenwold is entitled to demonstrate whether the officers acted in bad faith in their failure to preserve evidence. *See Wisconsin State Employees Union v. Henderson,* 106 Wis. 2d 498, 501-02, 317 N.W.2d 170, 171-72 (Ct. App. 1982) (the court of appeals is without jurisdiction to make factual determinations).

*By the Court.*—Order reversed and cause remanded with directions.