COURT OF APPEALS
DECISION
DATED AND FILED

May 27, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2266**

Cir. Ct. No. 2017CV57

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

NANCY KUCHARSKI,

PLAINTIFF-APPELLANT,

V.

DAVID MELONEY, LINDA MELONEY, KURT J. FISCHER AND
CARLA J. FISCHER,

DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Forest County: LEON D. STENZ, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Nancy Kucharski appeals a judgment dismissing her action to terminate an easement over her property.  The circuit court, relying on our decision in *Gojmerac v. Mahn*, 2002 WI App 22, ¶36, 250 Wis. 2d 1, 640 N.W.2d 178 (2001), concluded that when one of the lots holding an express easement over Kucharski's property was subdivided in 1997, both owners of the newly created parcels were entitled to make use of the easement.

¶2    Kucharski argues that the recording of two certified survey maps (CSMs) in 1979—which together created a six-lot subdivision that included Kucharski's property and the subsequently subdivided lot at issue in this case—created "a common plan or scheme" intended to prevent the six original lots from being further subdivided.  Thus, she contends the circuit court erred by applying *Gojmerac* to the facts of this case.  We disagree and affirm.

## BACKGROUND

¶3    In 1979, Dennis and Patricia Cychosz subdivided their resort property, located on Pickerel Lake in Forest County, into six residential lots.  They did so by creating and recording two CSMs, each of which depicted three of the newly created lots.

¶4    One of these CSMs depicted properties identified as "Lot 2" and "Lot 3," which are the lots primarily at issue in this appeal.  This CSM also showed the location of a twenty-foot easement across Lot 2 "for lake access."

¶5    In 1987, Kucharski and her late husband acquired Lot 2 (hereinafter, "the Kucharski lot") from the Cychoszes by land contract.  The terms of the contract stated the Kucharski lot was subject to a "20' easement for lake access to be maintained & used by lots 1-2-3-5-6-7 and no others."

¶6    In 1991, Laurine Fitzgerald acquired Lot 3 from James and Gail Smith. The deed transferring Lot 3 to Fitzgerald also transferred the "perpetual [lake access] easement … on, over and across" the Kucharski lot. Although the deed delineated certain restrictions on Fitzgerald's use of the easement,[1] it did not contain any limitation on her right to subdivide her property or transfer her easement rights.

¶7    In 1997, Fitzgerald subdivided Lot 3 into two lots. Kurt and Carla Fischer ultimately acquired one of the lots that had originally comprised Lot 3 (hereinafter, "the Fischer lot"), and David and Linda Meloney acquired the other (hereinafter, "the Meloney lot"). The deeds by which the Fischers and the Meloneys acquired their respective lots each transferred the right to use the easement on the Kucharski lot, using nearly identical language as was used to transfer that same right to Fitzgerald in 1991.

¶8    In 2017, Kucharski brought suit against both the Fischers and the Meloneys, seeking to extinguish one of their easements.[2] In support, Kucharski asserted that Lot 3 originally only benefitted from one easement, but that after its subdivision it benefited from two easements. She argued this "expansion of the easement was contrary to law, impermissibly harm[ed] the burdened property [i.e., the Kucharski lot], and [was] contrary to the original grant of the easement."

---

[1] For example, the deed stated that "[p]arking of vehicles, trailers, boats, etc. is prohibited." The language concerning the limitations on the use of the lake access easement appears to have first been used in a deed transferring Lot 3 from the Cychoszes to Russell and Elizabeth Dietrich in 1980.

[2] Kucharski's complaint asserted that the equities appeared to be in favor of extinguishing the Meloneys' easement, but it allowed that the extinguishment of either easement would be satisfactory.

¶9      The Meloneys, represented by counsel, answered and counterclaimed.[3]  The circuit court denied motions for summary judgment from both parties based on its determination that there was a disputed issue of material fact.  Specifically, the court stated that "under the law [the prior owners of Lot 3 were] entitled to subdivide it unless it creates an unreasonable burden," on the servient estate, and there was a question of fact as to whether Kucharski's estate had been unreasonably burdened.

¶10      At a bench trial, the circuit court granted the Meloneys' motion to dismiss the case at the close of Kucharski's evidence, pursuant to WIS. STAT. § 805.14(1) (2017-18).[4]  The court reasoned that there was "no credible evidence" that Kucharski's estate had been "unreasonably burdened.  There is no testimony with respect to that.  The testimony is quite the opposite, quite frankly.  The use of the easement is rather minimal."  Accordingly, the court entered a judgment reflecting that both the Meloneys' and the Fischers' easements were in "full force and effect."  Kucharski now appeals.

---

[3] The Fischers filed a pro se answer stating they did "not believe that we should be part of this Summons."  They did not file any further documents with the circuit court until three days prior to the scheduled trial date, when their recently hired attorney filed a notice of retainer and sought to adjourn the trial.  After the court declined to adjourn the trial, the Fischers' attorney moved to withdraw, and the Fischers appeared at the trial without representation.

Although the Fischers are named as respondents in this appeal, they filed a letter with this court stating they "read and agree with everything that is noted in the Brief filed on behalf of [the Meloneys]" and therefore "do not wish to file a Brief."  Consequently, we refer solely to the Meloneys when describing the litigation of this case in the circuit court and the arguments presented by the defendants-respondents on appeal.

[4] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

# DISCUSSION

¶11    On appeal, Kucharski does not challenge the circuit court's finding that she failed to introduce any credible evidence that her estate was unreasonably burdened.  Nor does she dispute that, under **Gojmerac**, that finding supported the court's conclusion that both the Meloneys and Fischers were entitled to make use of the lake access easement.  Instead, Kucharski contends the court erred by applying the **Gojmerac** test at all.  Whether the court applied the proper legal standard is a question of law that we review independently.  *See **State v. Greenwold**, 181 Wis. 2d 881, 884-85, 512 N.W.2d 237 (Ct. App. 1994).

¶12    In **Gojmerac**, we set forth the legal principles that apply to appurtenant easements.[5]  **Gojmerac**, 250 Wis. 2d 1, ¶¶18-25.  An appurtenant easement creates two distinct property interests:  a dominant estate and a servient estate.[6]  ***Id.***

¶13    A dominant estate cannot be enlarged.  ***Id.***, ¶23.  The enlargement of an estate refers to adding "property acquired after the creation of the dominant estate" to the dominant estate.  ***Id.***  As a general rule, however, when a "dominant estate is transferred in separate parcels to different persons, each grantee acquires a right to use easements appurtenant to the dominant estate, provided that the easements can be enjoyed as to the separate parcels without any additional burden

---

[5] "'Appurtenant' means that the rights or obligations of a servitude are tied to ownership or occupancy of a particular unit or parcel of land." **Gojmerac v. Mahn**, 2002 WI App 22, ¶18, 250 Wis. 2d 1, 640 N.W.2d 178.  The circuit court found that the lake access easement in this case is an appurtenant easement, and Kucharski does not challenge that finding on appeal.

[6] It is undisputed that the Kucharski lot is the servient estate and that, at the time it was subdivided, Lot 3 was the dominant estate.

on the servient estate." *Id.*, ¶25. Stated differently, "[i]f a dominant [estate] is subdivided between two or more owners, the easements appurtenant to it become subdivided and attach to each separate part of the subdivided dominant [estate] unless this result is prohibited by the terms of its conveyance." *Id.*, ¶36.

¶14    Kucharski argues that the above principles are not applicable in this case because here, unlike in *Gojmerac*, the lake access easement was "established as part of a common scheme for a subdivision." She reasons:

> The clear implication of [the lake access easement] notation [on the CSMs] … was to make the off water lots more attractive and valuable. To allow lots to be further subdivided and additional easements granted would go against the original plan and affect the value of all existing lots in the subdivision. Thus, the lake access easement notation served like a restrictive covenant.

Further, relying on *Crowley v. Knapp*, 94 Wis. 2d 421, 426, 288 N.W.2d 815 (1980), Kucharski argues that "[r]estrictive covenants may be enforced … under the general plan or scheme doctrine."[7]

---

[7] Our supreme court has provided the following explanation of the common plan or scheme of development doctrine:

> It is a well-established rule that a covenant restricting land to residential use, inserted by the proprietor in a conveyance of his lands, inures to the benefit of all the purchasers where it is inserted for the purpose of carrying out a general plan or scheme of development, and that it constitutes at least an equitable servitude upon the land, and constitutes a valuable property right which a court of equity will enforce in the absence of facts and circumstances making such enforcement unjust or inequitable.

*Crowley v. Knapp*, 94 Wis. 2d 421, 426, 288 N.W.2d 815 (1980).

6

¶15    Kucharski's argument fails for two reasons.  First, as Kucharski concedes in her reply brief, no Wisconsin authority supports her argument that notations on a CSM are sufficient to invoke the common plan or scheme of development doctrine.  Instead, as the *Crowley* court explained, our courts have limited the doctrine to situations where a common grantor placed substantially similar restrictive covenants into multiple deeds of conveyance.  *See id.* at 425-26.  Kucharski does not provide any developed argument explaining why we should extend this doctrine to notations on a CSM, and we therefore decline to do so.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶16    Second, even if we were to accept Kucharski's invitation to extend Wisconsin's common plan or scheme of development doctrine, Wisconsin's public policy favors the free and unrestricted use of property.  *See Crowley*, 94 Wis. 2d at 434.  Accordingly, when a party attempts to enforce a restrictive covenant under the common plan or scheme doctrine, the party must show that the restriction he or she seeks to enforce is expressed "in clear, unambiguous, and peremptory terms."  *Id.* at 435.

¶17    Kucharski falls far short of showing that the Cychoszes expressed a restriction on the use of the six original subdivided lots in "clear, unambiguous and peremptory terms."  Indeed, she acknowledges in her brief-in-chief that no language in the CSMs (or in any subsequent documents related to the lots at issue) "prohibit[s] subdividing of the original lots."

¶18    Nonetheless, Kucharski argues "[i]t is totally unrealistic to think that a developer would create a subdivision containing such a lake access easement with the intention that the original lots could be subdivided and additional easements granted."  Even assuming Kucharski's statement—which she does not

support with citation to any legal authority—is true, her argument still fails under the "clear, unambiguous, and peremptory" test set forth in *Crowley* because, once again, neither the CSMs nor any subsequent documents related to the lots at issue unambiguously prohibit subdivision of the original lots. *See id.*

¶19 Kucharski also makes a largely undeveloped argument that the language in the land contract by which she acquired her property undermines the circuit court's conclusion that the *Gojmerac* test should apply. Again, that land contract provided that the lake access easement was to be used "by lots 1-2-3-5-6-7 and no others." Kucharski appears to argue that the phrase "and no others" shows that the intent of the Cychoszes was to prevent any other lands than those listed in the land contract from benefitting from the use of the easement.

¶20 Kucharski's argument in this regard ignores that both the Meloneys and the Fischers own land that is expressly referred to in her land contract—Lot 3. Consequently, the test we set forth in *Gojmerac* (which, as stated, recognized that a dominant estate cannot be enlarged) has direct applicability here. *See Gojmerac*, 250 Wis. 2d 1, ¶36. Thus, based on its unchallenged finding that the Meloneys' and the Fischers' use of the easement did not unreasonably burden Kucharski's estate, the circuit court properly concluded that both the Meloneys' and the Fischers' easements were in "full force and effect."[8] *See id.*

---

[8] In their response brief, the Meloneys argue that the circuit court "could have also dismissed [the case] on the doctrine of laches." We need not, and do not, address this argument. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.