COURT OF APPEALS
DECISION
DATED AND FILED

May 16, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP891-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF3517

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

ROBERT LEE BANKS,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: DANIELLE L. SHELTON, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State of Wisconsin appeals from the circuit court order granting Robert Lee Banks's motion to suppress his confession to cocaine possession during a law enforcement interrogation interview. Banks moved to suppress because the video recording of his custodial interview including an alleged confession was irretrievably deleted from the Milwaukee County Criminal Information Bureau (CIB) computer system. The State argues that the deletion was not in bad faith or with official animus, even if the recording was potentially exculpatory; therefore, the circuit court improperly excluded the deputies' testimony about the interview. We reject the State's argument and we affirm.

## BACKGROUND

¶2 According to the criminal complaint, a Milwaukee County Sheriff's Office (MCSO) deputy stopped a silver Kia Sportage in Milwaukee for unsafe passing on August 6, 2019, when it passed a vehicle at a traffic light on the right while the other vehicle was also going straight. The deputy detained the driver and made contact with Banks, who was the front-seat passenger in the vehicle. Because neither the driver nor Banks had a valid driver's license, the deputy determined that the vehicle would need to be towed. With the driver's consent, the deputy searched the vehicle and found a 9mm handgun in the glove box. Because both the driver and Banks were convicted felons, the deputy arrested both of them.

¶3 In the search of Banks's person incident to arrest, the deputy found a clear plastic baggie of suspected cocaine. The substance was later tested and found to be cocaine, weighing 2.53 grams. During the search of the vehicle, the deputy also found suspected marijuana, cocaine, and methamphetamine, as well as

plastic baggies and a scale. After testing, the suspected drugs were confirmed: the marijuana weighed 40 grams, a separate bag of cocaine weighed 3.5 grams, and the methamphetamine tablets weighed 2.64 grams. The deputies also found several small pieces of paper with the word "ghost" written on it along with several phone numbers. When the deputies called the numbers, phones found on the driver's person started ringing.

¶4     Relevant to this appeal, the complaint also states that the deputy conducted a *Mirandized*[1] interview of Banks and the driver. The deputy reported that Banks admitted to possessing the cocaine found on his person. Banks was charged with one count of possession of cocaine as a second or subsequent offense.

¶5     At a status conference in September 2019, counsel for the defense informed the court it was awaiting discovery. At a status conference in November 2019, Banks's trial counsel requested a delay for additional discovery. The State informed the court that the State did not have the recordings of the interrogation interviews requested by the defense, stating, "Either they don't exist or we simply don't have them." The State requested additional time to find the video recordings. The State, out of court, informed Banks and counsel that the recorded interviews of Banks and the driver were not maintained on the CIB system so no recordings of the interviews were available.

¶6     In January 2020, at another status conference, Banks's attorney again noted that it had received a blank disc during discovery, but the State was

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

"working on that". The State told the court, "We've made a request from the deputy to produce a new copy for us. And as soon as we have it, I'll forward it down." There was no mention of the missing video recordings at status conferences in May, July or September 2020. At a November 2020 hearing, Banks's counsel referenced filing a spoliation motion regarding the missing video recordings.

¶7 In November 2020, Banks moved to dismiss the case based on destruction of evidence. He argued that the written summary of his interview with MCSO was inaccurate or incomplete. He contended that because the video recordings of the interrogation interviews for Banks and his co-actor, the vehicle's driver, were not preserved, Banks was unable to present evidence to dispute the MCSO version of his statement. He asserted that the recordings were apparently exculpatory and the State's failure through MCSO to preserve the evidence was in bad faith; accordingly, he demanded dismissal of the case. Alternately, he argued that the evidence was potentially exculpatory because the defense could use it to verify the deputies' and Banks's statements or to contradict the proffered officer reports. As remedies, Banks requested that the charges be dismissed, or the jury be instructed that it could consider MCSO's failure to preserve the video recording when evaluating the credibility and weight of the evidence, or that the testimony of MCSO deputies be excluded.

¶8 In the State's response, it opposed Banks's motion, explaining that when the State requested the video recordings, the MCSO deputy informed the State that the videos were unavailable. The deputy reported that "[t]he video application stores the video for only [sixty] days unless it gets exported, and we did not export it in time. I was unaware that [the CIB] system only saves video for that period, because our other system stores it for [six] months." The State argued

4

that there was no evidence that the deputy knew of any potentially exculpatory value and acted with official animus or conscious effort to suppress the video recordings. The State asserted there was no bad faith, and at worst, it was negligent to not preserve the video recordings.

¶9      In April 2021, the circuit court issued a written decision on Banks's motion, after a hearing in February 2021 during which the parties and the court agreed that testimony was not necessary to resolve the motion. It concluded that the videos were not apparently exculpatory. The court concluded that the recordings were potentially exculpatory and that the State, through the MCSO deputies, failed to preserve this potentially exculpatory evidence in bad faith. The circuit court concluded that while Banks had not shown "that law enforcement deliberately attempted to suppress" the video recordings, there was a "concession by the State of a policy that allows for the automatic purging of this type of evidence [which was] a clear display of official animus toward a defendant's due process rights." The court found that a violation of Banks's due process rights occurred and it granted Banks's motion to exclude the MCSO deputies' testimony regarding Banks's statements in the interrogation interview.

¶10      The State appeals from the order excluding the deputies' testimony regarding Banks's statements in the interrogation interview pursuant to WIS. STAT. § 974.05(1)(d)3. (2021-22).[2]

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

## DISCUSSION

¶11 The State argues that the circuit court erred when it granted Banks's motion to suppress the deputies' testimony regarding his interrogation interview in which the deputies state that Banks admitted to possessing the cocaine that was found on his person. The State argues that allowing this testimony would not violate Banks's due process rights. Conversely, Banks argues that that the circuit court's order was proper and should be upheld.

¶12 "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).[3] To establish a due process violation, "evidence not preserved, lost or destroyed by the State 'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *State v. Greenwold*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994) ("*Greenwold II*") (quoting *Trombetta*, 467 U.S. at 489).

¶13 Whether the State's action constitutes a due process violation is a question of law that this court reviews independently. *State v. Luedtke*, 2015 WI 42, ¶37, 362 Wis. 2d 1, 863 N.W.2d 592. "We uphold the circuit court's findings

---

[3] We rely on both Wisconsin and federal case law on the issue of evidence preservation. "Our precedent interprets the Wisconsin Constitution as providing the same due process protections for evidence preservation and destruction as the United States Constitution." *State v. Luedtke*, 2015 WI 42, ¶41, 362 Wis. 2d 1, 863 N.W.2d 592.

of historical fact unless they are clearly erroneous." *Id.*, ¶37. However, "questions of constitutional fact are also subject to independent review and require an independent application of the constitutional principles involved to the facts as found by the [circuit] court." *State v. Turner*, 136 Wis. 2d 333, 344, 401 N.W.2d 827 (1987).[4]

¶14 To determine whether a defendant's due process rights have been violated, we engage in a two-prong analysis of police conduct. *Greenwold II*, 189 Wis. 2d at 67. The first prong is to determine if the police "failed to preserve the evidence that is apparently exculpatory." *Id.* The second prong is to determine if the police "acted in bad faith by failing to preserve evidence which is potentially exculpatory." *Id.*

¶15 It is undisputed on appeal that there are no allegations to support that the deleted video recordings were "apparently exculpatory"; therefore, our analysis turns on prong two, which would rise to a due process violation only if the evidence was "potentially exculpatory" and the police acted in bad faith or with official animus. *Id.* at 68-69. Evidence is potentially exculpatory if it offers "an avenue of investigation that might have led in any number of directions." *Arizona v. Youngblood*, 488 U.S. 51, 56 n.* (1988). Bad faith is "shown if: (1) the officers were aware of the potentially exculpatory value or usefulness of the

---

[4] We note that Banks argues that the circuit court's finding of bad faith is a factual finding, held to the clearly erroneous standard. *See Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 517, 385 N.W.2d 171 (1986) ("Bad faith is a determination to be made by the trier of fact."). We note that *Mowry* analyzes a bad faith insurance claim. While the bad faith analysis of an insurance claim raises similar factual concerns, it does not raise constitutional concerns. The State correctly states that the reviewing court independently reviews the application of the constitutional standard to questions of constitutional fact. *State v. Greenwold*, 189 Wis. 2d 59, 66-67, 525 N.W.2d 294 (Ct. App. 1994) ("*Greenwold II*").

evidence they failed to preserve; and (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence." *Greenwold II*, 189 Wis. 2d at 69 (italics omitted).

¶16 We begin by reviewing two primary cases on the subject of potentially exculpatory evidence destruction in Wisconsin: *Greenwold* and *Luedtke*. In *Greenwold*, the defendant argued that the State unreasonably delayed testing blood samples for almost six months after a car crash that resulted in charges for homicide by intoxicated use of a motor vehicle. *State v. Greenwold*, 181 Wis. 2d 881, 883, 512 N.W.2d 237 (Ct. App. 1994) (*Greenwold I*) (explaining that the accident and initial investigation occurred in September 1990, but the search warrant for samples from the vehicle was not obtained until February 1991). The eventual testing of the samples showed inconclusive results. *Greenwold II*, 189 Wis. 2d at 65. This court concluded that while the police were negligent, the defendant had not proven bad faith in the totality of circumstances because he had not made a showing that the officers intentionally obstructed evidence nor had the officers been aware of the potentially exculpatory value of the evidence when they failed to collect it sooner. *Id.* at 69-70.

¶17 In *Luedtke*, our supreme court addressed two cases in which the defendants challenged the destruction of blood samples drawn arising out of operating a motor vehicle while under the influence of a controlled substance. *Id.*, 362 Wis. 2d 1, ¶¶2, 5. The blood samples were destroyed by routine policy approximately nine months after the blood draw in each case. *Id.*, ¶¶16, 28. The reports analyzing the blood samples in both defendants' cases stated that the blood sample specimens would not be retained longer than six months unless requested by an agency or the subject. *Id.*, ¶¶12, 26. Our supreme court held that even

intentional destruction of blood samples according to routine procedures "without more, does not establish bad faith." *Id.*, ¶56.

¶18    Banks argues that the recordings were potentially exculpatory because they were an avenue for him to dispute the deputies' written reports summarizing the interviews. The State appears to concede this point when it argues to this court that Banks's burden to show bad faith persisted "even if the recordings of the interviews were potentially exculpatory[.]" At the suppression hearing, the parties did not request that the deputies testify to allow the court to make credibility findings with regard to their recollection of the interview. The video recordings would have allowed the court to assess the entire interaction to determine the merits of Banks's complaint.[5] We conclude that Banks has adequately alleged that the video recordings were avenues of investigation relevant to Banks's defense; therefore, the destroyed video recordings were potentially exculpatory.

¶19    Banks next contends that the failure to preserve the recordings was an act of bad faith by the State, the second part of the second prong analysis in *Greenwold*. The State argues that Banks has not shown that the deputies acted in bad faith when they did not act to preserve the video recordings prior to the sixty day automatic deletion. The State contends that this is negligence at most. Appellate courts have generally concluded that police conduct resulting in the failure to preserve evidence may be unprofessional or "slip-shod," but a showing

---

[5] As discussed below, Wisconsin has established an affirmative duty for law enforcement to record custodial interviews in adult felony cases. *See* WIS. STAT. § 968.073.

of "mere negligence, without more, does not amount to a constitutional violation." *Montgomery v. Greer*, 956 F.2d 677, 681 (7th Cir. 1992).

¶20     While we agree with the State's argument that Banks has not shown an intent by the State to deprive Banks particularly and individually of potentially exculpatory evidence, we conclude that a policy of routinely deleting recordings of interrogation interviews at sixty days is unreasonable and demonstrates bad faith through official animus. Although we may hope that all cases flow smoothly through the justice system in time for a law enforcement officer to retrieve a recording in under sixty days, this evidence retention policy is unreasonably short.

¶21     We distinguish *Luedkte* and *Greenwold* from Banks's case by two factors: the short evidence retention time period, and the type of evidence proffered. First, the time period established to retain recordings from MCSO's recording application was unreasonably short at sixty days. While the defendant in *Greenwold* alleged the collection of evidence was improperly delayed, the evidence was still retained for more than six months. The blood samples in *Luedtke* were scheduled to be retained for about six months. Even the deputy in this case expressed an expectation of having six months to retrieve the video recordings. Moreover, unlike the defendants in *Luedtke*, Banks had no opportunity to directly request the preservation of the evidence. In fact, Banks's counsel raised the issue of missing discovery by the September 2019 hearing date, which arguably occurred within the sixty day preservation window.

¶22     Second, we distinguish Banks's case from prior cases by the type of evidence at issue. The examination of physical, testable evidence such as blood samples in *Greenwold* and *Luedtke* raises different concerns than the contents of a video interrogation interview. Banks's avenues to challenge the alleged

confession in the interrogation interview did not rely on scientific testing but on arguments about the interactions between Banks and the deputies, including the words used and body language. The absence of a video affects the trier of fact's ability to exercise its function of fact finding and credibility determination about what occurred during the interrogation.

¶23 Moreover, recording adult felony custodial interviews is required under Wisconsin law. *See* WIS. STAT. § 968.073(2) (providing it is the "policy of this state to make an audio or audio and visual recording of a custodial interrogation of a person suspected of committing a felony" except under specific circumstances). This statute creates a duty for law enforcement agencies to record custodial interviews. The statute does not contain a preservation requirement, but it would be illogical to compel the State to record custodial interviews without providing a means for defendants and the State to access that information.

¶24 In 2005, the legislature enacted requirements for recording custodial interviews for felony adult cases in WIS. STAT. § 968.073 and juvenile cases in WIS. STAT. § 938.195. *See* 2005 WIS. ACT 60. This legislative action was in response to *State v. Jerrell C.J.*, 2005 WI 105, ¶47, 283 Wis. 2d 145, 699 N.W.2d 110, in which our supreme court established that "unrecorded interrogations and any resultant written confession inadmissible as evidence in court" in juvenile cases. However, the statutory enactment included provisions for adult felony cases as well as juvenile cases. In explaining its rationale, our supreme court noted that "a recording requirement will provide courts with a more accurate and reliable record of a juvenile's interrogation. This will eliminate conflicts in evidence that are attributable to flaws in human memory. It will also enable judges to conduct nuanced reviews to resolve admissibility issues." *Id.*, ¶51 (footnote omitted). We infer that the advantages of recording juvenile

11

interrogations would similarly apply for purposes of adult felony interrogations. Further it is reasonable to infer that by the legislature establishing this recording requirement, the interviews themselves would be accessible during criminal investigations and prosecutions. MCSO having a policy that severely inhibits defendants or the State from accessing those recordings defeats that purpose.

¶25 Ultimately, we conclude that Banks satisfied his burden to show "official animus" by the State in failing to preserve these video recordings. Setting a policy with an unreasonably short retention time period takes "conscious effort" to disregard due process rights. *See Trombetta*, 467 U.S. at 488. Accordingly, we conclude that Banks has met his burden under the second prong of *Greenwold II*, by showing that the evidence was potentially exculpatory and that the destruction of evidence was made with official animus or bad faith by the State. We conclude that Banks's due process rights were violated. We therefore affirm the circuit court's decision to exclude the deputies' testimony to the extent it discusses any confession by Banks or his co-actor.

¶26 Further, we conclude that the exclusion order was narrowly tailored to react to the State's failure by policy to preserve potentially exculpatory evidence. The court did not dismiss the charges against Banks. While we do not doubt the State's claim that Banks's confession is important to its case, the probable cause in the criminal complaint relies on facts of the traffic stop itself and only references the custodial interview once. Banks was found in possession of the illegal substance giving rise to the charge. The State routinely proves to a jury beyond a reasonable doubt that a defendant is guilty even without the use of a confession.

## CONCLUSION

¶27    For the reasons stated above, we affirm the circuit court's order excluding the deputies' testimony regarding Banks's statements during the custodial interrogation.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.