COURT OF APPEALS
DECISION
DATED AND FILED

January 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1695-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF88

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MATTHEW ROBERT MAYOTTE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Taylor County: ANTHONY J. STELLA, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 GILL, J. Matthew Mayotte appeals a judgment of conviction, entered upon his *Alford*[1] plea, for one count of burglary of a building. He also appeals an order denying his postconviction motion for plea withdrawal. Mayotte contends that he should be permitted to withdraw his plea for two reasons: (1) the plea was involuntary because he entered it with the understanding that he could appeal the circuit court's previous denial of his motion to dismiss; and (2) his trial attorney was constitutionally ineffective by informing him that he could challenge the denial of his motion to dismiss on appeal after entering his plea.

¶2 We conclude Mayotte has failed to establish either that his plea was involuntary or that his trial attorney rendered ineffective assistance. We therefore affirm the judgment of conviction and the order denying postconviction relief.

## BACKGROUND

¶3 The State charged Mayotte with burglary of a building, felony bail jumping, misdemeanor theft, and two counts of criminal damage to property. According to the complaint, on September 14, 2019, Mayotte's brother contacted the Taylor County Sheriff's Office to report that Mayotte had stolen a set of keys from the Taylor County district attorney and had used them to enter the Taylor County courthouse. Mayotte's brother also reported that Mayotte changed the time on the courthouse's tower clock and took photos of himself on his cell phone while in the clock tower. Mayotte's brother further stated that Mayotte was drunk while on bond.

---

[1] *See **North Carolina v. Alford***, 400 U.S. 25 (1970). "An ***Alford*** plea is a guilty plea in which the defendant pleads guilty while either maintaining his innocence or not admitting having committed the crime." ***State v. Garcia***, 192 Wis. 2d 845, 856, 532 N.W.2d 111 (1995).

¶4    A Medford police officer followed up on this report and learned that an employee of the district attorney's office had lost her keys at the courthouse on September 5, 2019.  The officer also learned that the courthouse's clock tower had been tampered with and required repairs and that the district attorney's office was missing its file on Mayotte's open felony case.

¶5    Officers subsequently executed a search warrant at Mayotte's residence and took Mayotte into custody.  A detective interviewed Mayotte's roommate, who admitted that Mayotte had a set of keys belonging to the Taylor County district attorney; that Mayotte found the keys in the courthouse parking lot a week earlier; that Mayotte went to the courthouse and stole his own case file and another individual's case file; and that Mayotte burned the case files in a burn pit outside of their residence.  The detective searched the burn pit and found remnants of burned court paperwork, some of which pertained to a case involving an individual named Travis Spinler.  The detective then confirmed that Spinler's restitution file was missing from the district attorney's office.  The detective later interviewed Mayotte's girlfriend, who stated that Mayotte told her that he had found a set of keys belonging to the district attorney on courthouse property and had used the keys to enter the district attorney's office and steal his own case file and Spinler's file.

¶6    The complaint also recounted that law enforcement had reviewed surveillance video footage from the courthouse, which showed a person in a green hooded sweatshirt inside the courthouse during the early morning hours of September 6, 2019.  In particular, the video showed this person on the third floor of the courthouse near the door leading to the clock tower.  The video also showed the person entering the district attorney's office and then leaving the office with paperwork or case files.  The complaint alleged that the person's face could not be

seen on the surveillance video. The complaint also alleged, however, that law enforcement had located a sweatshirt similar to the one seen in the surveillance video inside Mayotte's residence.

¶7      After receiving discovery from the State, which included screenshots from the surveillance video but not the video itself, Mayotte learned that the State had failed to preserve the video. Mayotte therefore moved to dismiss the charges against him pursuant to *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *State v. Greenwold*, 181 Wis. 2d 881, 882, 512 N.W.2d 237 (Ct. App. 1994) (addressing the circumstances under which the government's failure to preserve evidence may result in a denial of due process). Hereinafter, we refer to Mayotte's motion to dismiss as his "*Youngblood* motion."

¶8      Following a hearing, the circuit court denied Mayotte's *Youngblood* motion. However, the court left open the issue of whether the State could refer to the video or use the screenshots at trial. Mayotte later filed motions in limine seeking to prevent the State from introducing the screenshots at trial and seeking an adverse inference instruction regarding the State's failure to preserve the video. The court denied Mayotte's motion to exclude the screenshots but granted his motion for an adverse inference instruction.

¶9      Shortly thereafter, Mayotte entered an *Alford* plea to the burglary charge, pursuant to a plea agreement. The agreement provided that in exchange for Mayotte's plea, the remaining charges would be dismissed and read in, and the parties would jointly recommend that the circuit court withhold sentence and place Mayotte on probation for thirty months, with sixty days of jail time imposed as a condition of probation. The court accepted Mayotte's *Alford* plea and followed the parties' joint sentence recommendation.

4

¶10    Mayotte subsequently filed a postconviction motion for plea withdrawal, asserting that he "was not properly advised of the appellate issues he was waiving by entering his plea" and was "unaware … that by entering his plea he waived his right to challenge the court's decision on his" *Youngblood* motion. Although Mayotte's postconviction motion sought plea withdrawal based on ineffective assistance of trial counsel, he later clarified that he was also alleging that his plea was not knowingly, intelligently, and voluntarily entered.

¶11    The circuit court denied Mayotte's postconviction motion, following a *Machner*[2] hearing. The court concluded that Mayotte was "not prejudiced by not allowing him to withdraw his plea" because any appellate challenge to the court's denial of Mayotte's *Youngblood* motion would have been unsuccessful. Mayotte now appeals.

## DISCUSSION

¶12    "The general rule is that a guilty, no contest, or *Alford* plea 'waives all nonjurisdictional defects, including constitutional claims[.]'" *State v. Kelty*, 2006 WI 101, ¶18, 294 Wis. 2d 62, 716 N.W.2d 886 (alteration in original; footnote omitted; citation omitted). Courts refer to this rule as the guilty plea waiver rule. *Id.*

¶13    Mayotte claims that he should be permitted to withdraw his *Alford* plea to the burglary charge because he was not aware at the time he entered his plea that the guilty plea waiver rule would prevent him from challenging the circuit court's denial of his *Youngblood* motion on appeal. In response, the State

---

[2] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

5

asserts that "[i]n the interest of finality and judicial economy," this court should "overlook" the guilty plea waiver rule and address Mayotte's *Youngblood* claim on the merits. Mayotte disagrees with the State's proposed approach, arguing that this court's consideration of the merits of his *Youngblood* claim would not remedy the fact that his plea was not knowing, intelligent, and voluntary.

¶14 We may, in our discretion, choose not to apply the guilty plea waiver rule in a particular case. *See State v. Tarrant*, 2009 WI App 121, ¶6, 321 Wis. 2d 69, 772 N.W.2d 750. Nevertheless, we decline to ignore the guilty plea waiver rule here. On appeal, Mayotte has not asked us to review the circuit court's denial of his *Youngblood* motion; he has asked us to determine whether the court erred by denying his postconviction motion for plea withdrawal. The issue on appeal is not whether Mayotte was entitled to dismissal of the charges against him, but whether his *Alford* plea was validly entered. Under these circumstances, we conclude that it would not be appropriate for us to ignore the guilty plea waiver rule. Instead, we will address the merits of Mayotte's arguments regarding his postconviction motion for plea withdrawal.

¶15 To withdraw his or her plea after sentencing, a defendant must show by clear and convincing evidence that a refusal to allow plea withdrawal would result in manifest injustice. *State v. Dillard*, 2014 WI 123, ¶36, 358 Wis. 2d 543, 859 N.W.2d 44. As relevant here, a defendant may demonstrate manifest injustice by showing that his or her plea was not knowing, intelligent, and voluntary, or by showing that his or her trial attorney was constitutionally ineffective. *Id.*, ¶¶37, 84. Both of these inquiries present questions of constitutional fact. *Id.*, ¶¶38, 86. On review, we will uphold the circuit court's factual findings unless they are clearly erroneous, but the application of the facts to the applicable legal standards is a question of law that we review independently. *Id.*

## I. Knowing, intelligent, and voluntary plea

¶16    Mayotte first contends that this plea was involuntary because it was "entered with the understanding that he could pursue the denial of his motion to dismiss on appeal."  In support of this argument, Mayotte relies on our supreme court's decision in *State v. Riekkoff*, 112 Wis. 2d 119, 332 N.W.2d 744 (1983).  There, Riekkoff's plea was expressly conditioned on a reservation of his right to appellate review of a pretrial order denying the admission of certain evidence.  *Id.* at 120-21.  The prosecutor "agreed to the conditional plea and the reservation" of Riekkoff's right to appeal, and the circuit court "acquiesced in the arrangement." *Id.* at 121.  On appeal, the supreme court considered whether "review may be preserved when the plea of guilty is conditioned upon the right to assert [a particular argument] on appeal and there is agreement by the prosecutor and acceptance of the plea by the trial judge."  *Id.* at 122.  The court answered that question in the negative, concluding that "conditional guilty pleas are not to be accepted and will not be given effect, except as provided by statute."  *Id.* at 130.

¶17    Nevertheless, the supreme court acknowledged that Riekkoff had entered his guilty plea "believing that he was entitled to an appellate review of the reserved issue" and that "[b]oth the prosecutor and the trial judge acquiesced in this view and permitted Riekkoff to believe that, despite his plea, appellate review could be had of the evidentiary order."  *Id.* at 128.  Under these circumstances, the court concluded as a matter of law that Riekkoff's plea was not knowing or voluntary.  *Id.*  The court therefore held that Riekkoff was entitled to withdraw his plea, if he wished to do so.  *Id.*

¶18    Based on *Riekkoff*, Mayotte argues that he is entitled to plea withdrawal because he entered his plea with the understanding that he could

appeal the circuit court's denial of his *Youngblood* motion following his conviction. We agree with the State, however, that *Riekkoff* "does not stand for the proposition that a defendant may automatically withdraw his or her plea any time the defendant is unaware of or misunderstands the guilty plea waiver rule." Instead, *Riekkoff* permitted plea withdrawal in a situation where the right to appellate review of a particular issue was a critical component of the plea agreement and where the prosecutor and the court affirmed the defendant's mistaken belief that he would be able to appeal that issue after entering his plea.

¶19　Those circumstances are not present in the instant case. Mayotte's plea agreement was not conditioned on his ability to appeal the circuit court's ruling on his *Youngblood* motion. Before Mayotte entered his plea, there was no discussion on the record about whether Mayotte's right to appeal the denial of his *Youngblood* motion would survive the entry of his plea. Neither the prosecutor nor the court endorsed the proposition that Mayotte could enter an *Alford* plea and then appeal the denial of his *Youngblood* motion. For these reasons, we agree with the State that *Riekkoff* is materially distinguishable and does not compel a conclusion that Mayotte's plea was involuntary.

¶20　Furthermore, while Mayotte contends that he did not understand the guilty plea waiver rule at the time he entered his plea, "[n]ot every misunderstanding of the law by a defendant negates the knowing and voluntary nature of a plea." *State v. Brown*, 2004 WI App 179, ¶11, 276 Wis. 2d 559, 687 N.W.2d 543. As relevant here, a defendant's failure to comprehend a collateral consequence of his or her plea does not render the plea involuntary where the defendant's misunderstanding was the result of the defendant's own inaccurate interpretation and was not based on any misinformation provided by the circuit court, the prosecutor, or defense counsel. *Id.*, ¶¶7, 12.

¶21    As the parties acknowledge, there are no published Wisconsin cases addressing whether the guilty plea waiver rule is a direct or collateral consequence of a plea.  "A direct consequence of a plea is one that has a definite, immediate, and largely automatic effect on the range of a defendant's punishment."  *Id.*, ¶7 (citation omitted).  Conversely, a collateral consequence "is indirect, does not automatically flow from the conviction, and may depend on the subsequent conduct of a defendant."  *Id.*  The guilty plea waiver rule:  (1) has no effect on the range of a defendant's punishment; (2) does not come into effect unless a defendant seeks to appeal a waived issue; and (3) comes into effect only if an appellate court decides to apply the rule.  We therefore agree with the State that the guilty plea waiver rule is properly categorized as a collateral consequence of a defendant's plea.[3]

¶22    As such, to show that his *Alford* plea was involuntary due to his belief that the plea would not bar him from appealing the circuit court's denial of his *Youngblood* motion, Mayotte must show that his belief in that regard was the result of inaccurate information that he received from defense counsel, the prosecutor, or the court, rather than the result of his own inaccurate interpretation.  *See Brown*, 276 Wis. 2d 559, ¶12.  Mayotte does not allege that he received any misinformation about the guilty plea waiver rule from the prosecutor or the circuit court.  He asserts, however, that he testified at the *Machner* hearing "that he believed based upon communications with his trial counsel he would be able to challenge [the denial of his *Youngblood* motion] despite entering his plea."  He

_____

[3] Notably, Mayotte does not develop any argument in his reply brief disputing the State's contention that the guilty plea waiver rule is a collateral consequence.  Unrefuted arguments may be deemed conceded.  *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

contends that this testimony "constituted evidence" that trial counsel misinformed him about the guilty plea waiver rule and his ability to appeal the denial of the *Youngblood* motion.

¶23    The record belies this claim.  At the *Machner* hearing, Mayotte testified that at the time he entered his plea, he understood that his *Youngblood* motion "would likely go through the appeal process."  He did not, however, specifically attribute that understanding to any information that his trial attorney provided.  To the contrary, Mayotte testified that he could not recall whether he had any communications with his trial attorney about how his plea would affect his ability to appeal the denial of his *Youngblood* motion.  Mayotte testified that after the *Youngblood* motion was denied, his trial attorney "did mention something about it[,] saying that it might go through the appeal process," but Mayotte did not remember exactly what counsel said.  On cross-examination, Mayotte conceded that he did not recall asking trial counsel before he entered his plea whether the denial of his *Youngblood* motion would be appealed.

¶24    Thus, Mayotte's *Machner* hearing testimony does not support his claim that his mistaken belief about his ability to appeal the denial of his *Youngblood* motion was based on misinformation provided by his trial attorney.[4] As such, Mayotte's misunderstanding regarding that collateral consequence of his plea did not render the plea involuntary.

---

[4] Mayotte's trial attorney testified at the *Machner* hearing that he did not remember whether he had any discussions with Mayotte before entry of the plea about appealing the denial of the *Youngblood* motion.

10

## II. Ineffective assistance of trial counsel

¶25 Mayotte also argues that he should be permitted to withdraw his plea because his trial attorney was constitutionally ineffective. To prevail on an ineffective assistance of counsel claim, a defendant must prove both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Dillard*, 358 Wis. 2d 543, ¶85. To establish deficient performance, a defendant must show that counsel's performance fell outside of the wide range of professionally competent assistance. *Id.*, ¶88. To establish prejudice in the plea withdrawal context, a defendant must show a reasonable probability that, but for counsel's errors, the defendant would not have entered a plea and would have insisted on going to trial. *State v. Bentley*, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996).

¶26 Mayotte claims that his trial attorney's performance was deficient "with regard to informing Mayotte he could challenge the pretrial motion to dismiss after entry of his plea and waiver of appeal rights with regard to the motion." We reject this argument for two reasons. First, as discussed above, the record does not support Mayotte's claim that trial counsel told him that he could appeal the denial of his *Youngblood* motion after entering his plea. Second, to the extent Mayotte means to argue that counsel performed deficiently by failing to inform him of the existence of the guilty plea waiver rule, the failure to inform a defendant about a collateral consequence of a plea does not constitute deficient performance. *See State v. LeMere*, 2016 WI 41, ¶30, 368 Wis. 2d 624, 879 N.W.2d 580. Under these circumstances, Mayotte has failed to show that his attorney's performance fell outside the wide range of professionally competent assistance. *See Dillard*, 358 Wis. 2d 543, ¶88.

¶27    Mayotte has also failed to satisfy the prejudice prong of his ineffective assistance claim. To establish prejudice in this context, Mayotte must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). We agree with the State that Mayotte cannot make this showing.

¶28    If convicted on all five of the charges at trial, Mayotte faced maximum sentences totaling more than twenty years of imprisonment. The plea agreement allowed Mayotte to enter an *Alford* plea to a single charge, which permitted him to maintain his innocence. In exchange for Mayotte's plea, the remaining charges were dismissed and read in, and the parties agreed to jointly recommend a probationary disposition, rather than a prison sentence.

¶29    At the *Machner* hearing, trial counsel testified that Mayotte was reluctant to go to trial. Counsel explained, "[I]t was a risk litigation technique where we had to either risk what would likely be a substantial prison sentence versus a probation offer, so it would—it was felt that it's not worth it to go to trial." Counsel also testified that under the circumstances, he believed that it was in Mayotte's best interest to accept the plea offer. Mayotte never testified or submitted an affidavit stating that he would have rejected the State's plea offer and gone to trial had he known that entering a plea would bar him from appealing the circuit court's denial of his *Youngblood* motion.

¶30    On this record, we cannot conclude that it would have been rational for Mayotte to reject the State's plea offer—which involved the dismissal of four charges and a joint recommendation of probation—and risk going to trial and possibly receiving a significant prison sentence, simply to preserve his ability to appeal the circuit court's denial of his *Youngblood* motion. *See Padilla*, 559 U.S.

at 372. The strength of the State's evidence against Mayotte further supports our conclusion in this regard. Mayotte has failed to establish a reasonable probability that, absent his trial attorney's alleged errors, he would not have entered his plea and would have insisted on going to trial.[5] *See **Bentley***, 201 Wis. 2d at 312.

> *By the Court.*—Judgment and order affirmed.

> Not recommended for publication in the official reports.

---

[5] In addition, we note that Mayotte has not responded to the State's argument that he failed to establish the prejudice prong of his ineffective assistance claim. Again, unrefuted arguments may be deemed conceded. ***Charolais Breeding Ranches***, 90 Wis. 2d at 109.